**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AUDREY FOBER, on behalf of herself
and all others similarly situated,
                    *Plaintiff-Appellant*,

v.

MANAGEMENT AND TECHNOLOGY
CONSULTANTS, LLC; DOES, 1
through 10, inclusive,
                    *Defendants-Appellees.*

No. 16-56220

D.C. No.
8:15-cv-01673-
CJC-DFM

OPINION

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted February 8, 2018
Pasadena, California

Filed March 29, 2018

Before: Susan P. Graber and Andrew D. Hurwitz, Circuit
Judges, and Algenon L. Marbley,* District Judge.

Opinion by Judge Graber

---

*The Honorable Algenon L. Marbley, United States District Judge for
the Southern District of Ohio, sitting by designation.

## SUMMARY[**]

---

**Telephone Consumer Protection Act**

Affirming the district court's summary judgment in favor of the defendant in an action under the Telephone Consumer Protection Act, the panel held that the plaintiff consented to receive quality assurance calls when she signed a health insurance enrollment form.

---

## COUNSEL

Adrian Bacon (argued) and Todd M. Friedman, Law Offices of Todd M. Friedman, Woodland Hills, California, for Plaintiff-Appellant.

Harrison Maxwell Brown (argued), Yosef Mahmood, and Ana Tagvoryan, Blank Rome LLP, Los Angeles, California, for Defendant-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

GRABER, Circuit Judge:

In a putative class action complaint, Plaintiff Audrey Fober alleged that Defendant Management and Technology Consultants, LLC ("MTC") violated the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, by calling her repeatedly through an automatic telephone dialing system. The district court entered summary judgment for MTC on the ground that Plaintiff had consented to the calls. We affirm.

FACTUAL AND PROCEDURAL HISTORY

The following facts are undisputed. At all relevant times, Plaintiff was a member of the Health Net of California, Inc. ("Health Net") insurance plan. Upon enrolling in that plan, Plaintiff completed and signed an "Enrollment and Change Form for Small Business Group" ("Enrollment Form"). Plaintiff provided her phone number on the Enrollment Form. In the Enrollment Form, she agreed to the following terms:

> THE USE AND DISCLOSURE OF PROTECTED HEALTH INFORMATION: I acknowledge and understand that health care providers may disclose health information about me . . . to Health Net Entities . . . . *Health Net Entities . . . may disclose this information for purposes of* treatment, payment and *health plan operations, including* but not limited to, utilization

> management, *quality improvement*, disease or
> case management programs.

(Emphases added.)

Health Net assigned Plaintiff to a medical group, Affiliated Doctors of Orange County ("ADOC"), and selected Dr. Barry Schwartz, a member of ADOC, to serve as her primary care physician. ADOC and Regal Medical Group ("Regal") are affiliated medical groups of the Heritage Provider Network. The Heritage Provider Network has a contract with MTC, under which MTC conducts patient satisfaction surveys and quality-of-care analysis regarding the Heritage Provider Network's affiliated medical groups, including ADOC. Regal manages that enterprise on behalf of ADOC.

Plaintiff visited Dr. Schwartz' office twice. During her first visit, Plaintiff completed a Patient Registration Form ("Intake Form") and, once again, provided her phone number. After each of Plaintiff's visits, Regal gave MTC Plaintiff's name, contact information, treating physician's name, and date of office visit so that MTC could conduct quality assurance survey calls. Regal received Plaintiff's contact information directly from Health Net before passing that information to MTC. MTC called Plaintiff several times to ask about the quality of her experience with Dr. Schwartz.

Plaintiff then brought this action, alleging that MTC had violated the TCPA by calling her. MTC moved for summary judgment on the ground that Plaintiff had given "prior express consent," 47 U.S.C. § 227(b)(1), to being called. The district court granted the motion, holding that Plaintiff

consented to the calls when she submitted the Enrollment Form.  Plaintiff timely appeals.

## DISCUSSION[1]

The TCPA prohibits "any person within the United States" from using an "automatic telephone dialing system or an artificial or prerecorded voice" to call a phone number assigned to a "cellular telephone service."  47 U.S.C. § 227(b)(1).  But the statute excepts calls made with the recipient's "prior express consent."  *Id.*  The only issue before us is whether Plaintiff gave "prior express consent" to receiving MTC's calls.

We hold that Plaintiff, by completing and submitting the Enrollment Form, gave "prior express consent" to the calls at issue.  We therefore need not and do not opine on the effect of the Intake Form.

### A.  *Statutory and Regulatory Framework*

Congress enacted the TCPA to protect the interests of telephone users by placing restrictions on "unsolicited, automated telephone calls." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (quoting S. Rep. No. 102-178, at 1 (1991)).  That is, the statute aims to curb a particular type of *uninvited* call.  As a result, the statute omits from its ambit those calls that a person agrees to receive.  *Id.*

The TCPA grants the Federal Communications Commission ("FCC") authority to implement its requirements

---

[1] We review de novo an order granting summary judgment.  *Metro. Life Ins. Co. v. Parker*, 436 F.3d 1109, 1113 (9th Cir. 2006).

by prescribing rules and regulations. 47 U.S.C. § 227(b)(2).[2] The FCC has long interpreted the TCPA to embody the principle that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, 8769 (1992). That is, in the FCC's view, the very act of turning over one's phone number demonstrates a willingness to be called about certain things, barring instructions to the contrary. *Id.*

Merely providing a phone number, however, does not evince a willingness to be called for *any* reason. *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1045–46 (9th Cir. 2017). Thus, "FCC orders and rulings show that . . . transactional context matters in determining the scope of a consumer's consent to contact." *Id.* at 1046. To fall within the "prior express consent" exception, a call must relate to the reason why the called party provided his or her phone number in the first place. *Id.*

Importantly, though, the TCPA does not require any one method for obtaining "prior express consent." *In re GroupMe, Inc./Skype Commc'ns*, 29 F.C.C. Rcd. 3442, 3444 (2014). Accordingly, as the Eleventh Circuit has explained, the analysis under the FCC's rulings turns on *whether* the called party granted permission to be called concerning a

---

[2] We presume the validity of the relevant FCC rules and regulations. *See US W. Commc'ns, Inc. v. Jennings*, 304 F.3d 950, 958 n.2 (9th Cir. 2002) (noting that "[p]roperly promulgated FCC regulations currently in effect must be presumed valid" for purposes of a case not brought pursuant to the Hobbs Act).

particular topic and not on *how* the calling party received the number. *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1123–24 (11th Cir. 2014). Thus, a party that receives an individual's phone number *indirectly* may nevertheless have consent to call that individual. *Id.*

As an example, a person can consent to calls from a creditor by affirmatively giving an "intermediary" (for example, a hospital) permission to transfer her number to the creditor for billing purposes. *Id.* at 1124. An intermediary cannot, however, convey consent that has not been obtained; in every case, "the scope of consent must be determined upon the facts of [the] situation [in which the person gave consent]." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7990 (2015).

B. *The Enrollment Form*

On the Enrollment Form, Plaintiff provided her phone number and agreed that Health Net could disclose her information "for purposes of treatment, payment and health plan operations, including but not limited to, utilization management, *quality improvement*, disease or case management programs." (Emphasis added.) That is exactly what happened. Health Net, albeit through an intermediary, provided MTC with Plaintiff's phone number. MTC then called Plaintiff for a purpose expressly described in the Enrollment Form—i.e., assessing the quality of Plaintiff's healthcare.

The key in determining whether a consumer has granted "prior express consent" to a particular call is the nature of the call. *Van Patten*, 847 F.3d at 1045–46. In completing the

Enrollment Form, Plaintiff agreed to receive calls meant to improve the quality of her health plan. The calls that Plaintiff ultimately received—calls to assess her satisfaction with Dr. Schwartz' services—were undoubtedly made with the purpose of improving the quality of Plaintiff's care. We thus conclude that the calls, at least in terms of substance, fell within the scope of the consent that Plaintiff gave.

Plaintiff argues, though, that her consent extended only to calls concerning the quality of *Health Net's* services and not to calls concerning the quality of *Dr. Schwartz'* services. We disagree because the text in the Enrollment Form sweeps broadly.[3] Plaintiff authorized calls pertaining to the operation of her health plan and, relatedly, to the quality of her health plan. The calls at issue were intended to measure whether Plaintiff's experience with a doctor that Health Net assigned Plaintiff *through her health plan* was satisfactory. It takes little imagination to see how that feedback might assist in improving the quality of Plaintiff's health plan generally.

Further, it does not matter that MTC, rather than Health Net itself, ultimately placed the calls. As the Sixth Circuit has explained, "[t]he FCC's rulings in this area make no distinction between directly providing one's cell phone number . . . and taking steps to *make that number available* through other methods, like consenting to disclose that number to other entities for certain purposes." *Baisden v. Credit Adjustments, Inc.*, 813 F.3d 338, 346 (6th Cir. 2016). Plaintiff "took steps" to make her number available to MTC. True, Plaintiff could not have known the identity of the

---

[3] Contrary to Plaintiff's assertions, the Enrollment Form's text is not ambiguous. Rather, the text is broad. Breadth alone does not equal ambiguity.

specific entity that would ultimately call her. But when Plaintiff authorized Health Net to *disclose* her phone number for certain purposes, she necessarily authorized someone *other* than Health Net to make calls for those purposes. Specifically, she authorized calls from entities *to which Health Net disclosed her information*.[4] MTC falls within that category.

Plaintiff argues that the calls at issue nevertheless fall outside the "prior express consent" exception because MTC has not demonstrated that it called Plaintiff *on Health Net's behalf*. There is no statutory or logical basis for imposing such a requirement. The TCPA aims to curb a particular kind of call: a call that a person *does not expect to receive*. So the statute's applicability turns entirely on what conduct the called party authorized. Of course, as a theoretical matter, Plaintiff *could* have authorized only calls made on Health Net's behalf. But that is not what happened. Instead, Plaintiff authorized callers to whom Health Net disclosed her information to make a particular type of call—one relating to the quality of Plaintiff's healthcare. MTC falls within the group of permissible callers, and the calls that it placed were of the kind that Plaintiff agreed to receive.

The facts of *Baisden* provide a useful analogy. There, the plaintiff authorized a hospital to "use her health information for a range of purposes including billing and collecting money[]" and to "release her health information to such employees . . . as are necessary for these purposes." *Id.* at

---

[4] Plaintiff's argument that the Enrollment Form provides for the disclosure of information only to Health Net Entities, the SafeGuard Entities, or Fidelity Entities is unavailing. The Enrollment Form goes on to say that those entities may further disclose Plaintiff's information.

346 (alterations omitted).  The Sixth Circuit explained that such consent permitted the hospital to give the plaintiff's information to its anesthesiology provider for purposes of debt collection and further permitted the anesthesiology provider to pass the plaintiff's information on to *its* debt collector.  *Id.* at 347.  The decision did not turn on whether the debt collector called the plaintiff on the hospital's behalf, or even on whether the debt collector *knew* that the plaintiff had authorized certain calls.  Rather, the dispositive factor was—as it is in every case concerning "prior express consent"—the scope of contact that the plaintiff authorized. *Baisden*'s reasoning applies persuasively here.  Just as the *Baisden* plaintiff, through her hospital, granted the debt collector permission to call her about her debts, Plaintiff, through Health Net, granted MTC the right to call her about the quality of care that she received.

Our decision in *Satterfield* is not to the contrary.  In fact, it supports our conclusion.  In *Satterfield*, the plaintiff consented to calls from a particular entity and its "affiliates," but the defendant, Simon & Schuster, was neither that entity nor one of its affiliates.  569 F.3d at 954–55.  This case differs in that Plaintiff's consent contained no such limitation. To the contrary, Plaintiff granted Health Net broad authority to disclose her information for certain purposes, of which quality assurance was one.  We hold that Plaintiff, by completing and submitting the Enrollment Form, gave "prior express consent" to receiving the calls at issue.

**AFFIRMED.**