**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3609
_____

PHYSICIANS HEALTHSOURCE, INC., an Ohio
Corporation, individually and as the representative of a class
of similarly-situated persons,

Appellant

v.

CEPHALON, INC.; CEPHALON CLINICAL PARTNERS,
L.P.; CEPHALON DEVELOPMENT CORPORATION;
SCIMEDICA GROUP, LLC; SCIMEDICA GROUP
MARKETING RESEARCH AND CONSULTING, LLC;
JOHN DOES 1-10

and

SCIMEDICA GROUP, LLC; SCIMEDICA GROUP
MARKETING RESEARCH AND CONSULTING, LLC,

Third-Party Plaintiffs

v.

BLITZ RESEARCH, INC.,

Third-Party Defendant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2:12-cv-03753)
District Judge: Honorable John R. Padova
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 21, 2019
_____

Before: GREENAWAY, JR., PORTER, and COWEN,
*Circuit Judges*.

(Opinion Filed: March 30, 2020)

Jeffrey A. Berman, Esq.
Glenn L. Hara, Esq.
Anderson & Wanca
3701 Algonquin Road
Suite 500
Rolling Meadows, IL 60008
                    *Counsel for Appellant*

Nicholas H. Pennington, Esq.
Joseph E. Wolfson, Esq.
Stevens & Lee
620 Freedom Business Center
Suite 200
King of Prussia, PA 19406
                    *Counsel for Appellees*
*Cephalon, Inc.; Cephalon Clinical Partners, LP; Cephalon*
*Development Corp.*

Sheryl S. Levy, Esq.
Cooper Schall and Levy
1204 Township Line Road
Drexel Hill, PA 19026
            *Counsel for Appellees*
*SciMedica Group, LLC; SciMedica Group Marketing*
*Research and Consulting LLC*

_____

OPINION OF THE COURT
_____

GREENAWAY, JR., *Circuit Judge*.

In this digital age with myriad forms of communication, faxes no longer dominate, as they once did. Yet, faxes are the focus of our attention today. Although complicated by a phalanx of parties, the essence of this dispute is whether a pharmaceutical company violated a federal statute by impermissibly sending two faxes to a doctor.

The plaintiff-appellant in this case is Physicians Healthsource, Inc. ("PHI"), the prior employer of the doctor, who was the recipient of the faxes. The appellees in this case are Cephalon, Inc., Cephalon Clinical Partners, L.P., and Cephalon Development Corporation (collectively "Cephalon"), and SciMedica Group, LLC and SciMedica Group Marketing Research and Consulting, LLC ("SciMedica" collectively with

3

Cephalon "Defendants").[1]  Cephalon drug representatives met with the PHI doctor on multiple occasions to discuss various pharmaceutical drugs.  The two faxes in dispute were sent to the PHI doctor on behalf of Cephalon.

PHI believes these faxes were *unsolicited* and thus sent in violation of the Telephone Consumer Protection Act of 1991 ("TCPA"), Pub. L. No. 102-243, 105 Stat. 2394, as amended by the Junk Fax Prevention Act of 2005 ("JFPA"), Pub. L. No. 109-21, 119 Stat. 359 (codified as amended at 47 U.S.C. § 227, collectively referred to herein as the "TCPA").  Additionally, PHI argues that if the faxes are found to be *solicited*, they nevertheless violated the TCPA by failing to include opt-out language.

The District Court granted summary judgment in favor of Defendants, finding that there was no genuine dispute of material fact that the faxes were solicited and that the TCPA does not require solicited faxes to contain opt-out notices.  For the reasons detailed below, we will affirm.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 2009, two faxes were sent to Dr. Jose Martinez on behalf of Cephalon.[2]   At the time, Dr. Martinez worked for PHI,

---

[1] Blitz Research, Inc. ("Blitz") is a third-party defendant, and SciMedica Group, LLC and SciMedica Group Marketing Research and Consulting, LLC are third-party plaintiffs.

[2] At summary judgment, Cephalon argued that the faxes were sent by SciMedica, while SciMedica contended the two faxes were transmitted by Blitz, and so SciMedica filed a crossclaim

4

practiced in the area of pain management, and met with Cephalon drug representatives on various occasions to discuss different Cephalon drugs. During certain visits, Cephalon representatives asked Dr. Martinez if they could follow up with him and "send [him] things," after which faxes were sometimes then sent, faxes that Dr. Martinez never told Cephalon or its representatives to stop sending. JA195. Here though, only two faxes are in dispute.

The first fax at issue, addressed to Dr. Martinez, was an invitation to a dinner meeting program on a drug called AMRIX®. The second fax was an invitation to a promotional product lunch on FENTORA®. Both drugs are pain medications, and both are drugs that Dr. Martinez had discussed with Cephalon representatives previously. Indeed, at his request, Dr. Martinez had received samples of AMRIX® on multiple occasions. Neither fax included opt-out language (*i.e.*, language informing the recipient that he or she could decline future faxes).

Importantly, it is undisputed that PHI provided its fax number to Defendants via business cards. PHI concedes that "at best, Defendants marshalled enough evidence at summary judgment to show . . . *[PHI's] voluntary communication*" of its fax number to Defendants. Appellant's Br. 24 (internal quotation marks omitted) (emphasis added). And during his deposition, Dr. Martinez noted that the business cards, with the fax number

---

against Blitz. It is undisputed that Cephalon had another party send the faxes on its behalf, and for the purpose of resolving this appeal whether SciMedica sent the faxes or Blitz sent the faxes is immaterial.

in question, were made available to drug representatives, so that they could get in touch with him.

Nevertheless, believing these faxes were sent in violation of the TCPA, PHI subsequently filed a putative class action complaint asserting damages, as "[u]nsolicited faxes damage their recipients . . . [who] lose[] the use of [their] fax machine, paper, and ink toner." Docket 1. PHI thus asserted that it was entitled to either its actual monetary losses or statutory damages, whichever was greater, because Defendants sent unsolicited faxes that failed to contain opt-out notices.

Defendants filed summary judgment motions claiming the two faxes were not subject to the TCPA's requirements because they were sent with prior express permission, meaning they were solicited and thus not prohibited by the TCPA, and also arguing that solicited faxes did not need to contain opt-out notices.[3] The District Court granted both summary judgment motions. *See Physicians Healthsource, Inc. v. Cephalon, Inc.*, 340 F. Supp. 3d 445, 453–54 (E.D. Pa. 2018). PHI timely appealed.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. Our review of a district court's grant of summary judgment is plenary, and we apply the same standard as the district court to determine whether summary judgment was appropriate. *Jester v. Hutt*, 937 F.3d 233, 238 (3d Cir. 2019). Summary judgment is appropriate only when "there is no genuine dispute as to any

---

[3] SciMedica adopted the arguments set forth by Cephalon.

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* We view all "the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Stone v. Troy Constr., LLC*, 935 F.3d 141, 147 n.6 (3d Cir. 2019).

## III.   ANALYSIS

This case presents no genuine dispute of material fact regarding whether the faxes sent were solicited—they were— and whether solicited faxes needed to contain opt-out language—they do not. As such, we will affirm the District Court's grant of summary judgment in favor of Defendants.

## A.   The Two Faxes Were Solicited

In this case, the issue of whether the two faxes were solicited or unsolicited boils down to whether the voluntary provision of a fax number, akin to the voluntary provision of a telephone number, constitutes express consent, invitation, and permission, and whether "express consent" and "express invitation or permission"—as found in the TCPA—are interchangeable. Because we find that—and because PHI concedes to the fact that—there was a voluntary provision of a fax number to Defendants, and because we find that "express consent" and "express invitation or permission" are interchangeable, we conclude that the voluntary provision of a

7

fax number constitutes express consent, invitation, and permission, such that the two faxes in this case were *solicited*.[4]

### i. Voluntary Provision of a Number

Under the TCPA, it is unlawful to send an unsolicited fax advertisement unless three conditions are met. 47 U.S.C. § 227(b)(1)(C)(i)-(iii); *see also Mauthe v. Optum Inc.*, 925 F.3d 129, 132 (3d Cir. 2019). Specifically, the statute prohibits "any person within the United States, or any person outside the United States if the recipient is within the United States . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement[.]" 47 U.S.C. § 227(b)(1)(C). An "unsolicited advertisement," is that which is sent "to any person without that person's *prior express invitation or permission*, in writing or otherwise." *Id.* § 227(a)(5) (emphasis added). Thus, fax advertisements sent with the recipient's prior express invitation or permission (*i.e.*, solicited faxes) are not violative of the TCPA. *Id.*

The voluntary provision of a number—phone or fax—by a message-recipient to a message-sender, constitutes express consent such that a received message is *solicited* and thus not prohibited by the TCPA, if the message relates to the reason the number was provided. *See, e.g.*, *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 389 (3d Cir. 2017); *see also Fober v. Mgmt. & Tech. Consultants, LLC*, 886 F.3d 789, 793 (9th Cir. 2018) (concluding that the provision of a phone number and receipt of a call that relates to "the reason why the called party

---

[4] Our dissenting colleague views this case as evidencing only implied consent. Hence, the crux of our disagreement.

8

provided his or her phone number in the first place" constitutes express consent such that the calls were deemed solicited); *KHS Corp. v. Singer Fin. Corp.*, No. 16-55, 2018 WL 4030699, at *4 (E.D. Pa. Aug. 23, 2018) (concluding the same, but in the context of fax advertisements, and collecting cases).

In *Daubert*, a plaintiff alleged a violation of the TCPA due to the receipt of sixty-nine calls that he alleged were unsolicited. 861 F.3d at 387. The defendant argued that the district court was wrong in granting summary judgment on the plaintiff's TCPA claim, contending instead that a jury could conclude the plaintiff had provided his "prior express consent" to receive calls regarding a medical bill. *Id.* at 389. This Court proceeded to analyze the TCPA's scope "guided by the statute's text, the Federal Communications Commission's (FCC's) interpretations of the statute, the statute's purpose, and our understanding of the concept of consent as it exists in the common law." *Id.* at 389. We first afforded express consent its ordinary meaning. *Id.* Then, we noted that: "On the issue of *prior express consent* the FCC has found that '*persons who knowingly release their phone numbers* have in effect given their *invitation or permission* to be called at the number which they have given, absent instructions to the contrary.'" *Id.* (quoting *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, 8769 (1992)) (emphasis added).

We then summarized the FCC's relevant ruling, namely, that the provision of a number to a party evidences prior express consent by the number-provider to be contacted at the number provided for purposes relating to why the number was provided. *Id.* at 390. And we noted that "[t]he FCC's rulings make no distinction between directly providing one's cell phone number to a creditor and taking steps to *make that*

9

*number available* through other methods, like consenting to disclose that number to other entities for certain purposes." *Id.* (citation and quotation marks omitted). Finally, we affirmed that "Congress did not intend to depart from the common law understanding of consent . . . that it's given *voluntarily*." *Id.* at 390 (citation and quotations marks omitted) (emphasis added).

Though the facts of *Daubert* differ from the facts of this case it is instructive on the TCPA and when prior express consent exists.[5] *Id.* Prior express consent can be deduced from a message-recipient's *voluntary provision* or "knowing[] release" of his or her number to a message-sender, such that a message is solicited and thus not prohibited by the TCPA if the message relates to the reason the number was provided. *Id.* at 389; *see also Fober*, 886 F.3d at 793; *KHS Corp.*, 2018 WL 4030699, at *4. Indeed, the FCC's own explanation supports this concept, explaining that "[e]xpress permission to receive a faxed ad requires that the consumer *understand* that by providing a fax number, he or she is agreeing to receive fax advertisements." *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, No. 19-1452, 2020 WL 881329, at *3 (7th Cir. Feb. 24, 2020) (quoting *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act (TCPA) of 1991*, 17 F.C.C. Rcd. 14014, 14129 (2003)) (emphasis added); *see also*

---

[5] In *Daubert* there was no direct evidence that the plaintiff had given his prior express consent to receive calls, as he had merely provided his cell number to a hospital, an intermediary associated with a creditor, when he was admitted. *Daubert*, 861 F.3d at 390.

10

*Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1101 (11th Cir. 2019) (finding that hotel franchisees had provided their express permission and invitation to receive faxes because the franchisees *understood* that the Wyndham Hotel Group might provide optional assistance with facility items, which would inherently entail receiving information about products to purchase, and that by having included a fax number in an agreement, "the hotels invited the assistance or advertisements to come by fax.").[6]

Here, it is undisputed that PHI voluntarily provided a business card with a fax number on it to Defendants (*i.e.*, knowingly released the number such that the provision was an invitation

---

[6] In this case, PHI *understood* that the voluntary provision of their business card, with a fax number on it, was in part for the purpose of having drug representatives contact them with information on the drugs. *See* JA200 (answering affirmatively in a deposition that the business cards were provided for the drug representatives "to have, so they could get in touch" with the doctors). We acknowledge that PHI believes *A-S Medication* supports their position in this matter, but the facts between that case and the present case are clearly distinguishable. In *A-S Medication*, a company sent a fax advertisement to 11,422 different numbers from an "acquired customer list." 2020 WL 881329, at *1. That is drastically different from the present case wherein two faxes were sent to PHI after drug representatives had continued and sustained contact with Dr. Martinez and voluntarily provided fax numbers, in part, for the purpose of having drug representatives be in contact and provide follow-up information.

11

to be contacted), and it is undisputed that the two faxes related to prior conversations Cephalon's drug representatives had with Dr. Martinez as part of an ongoing business relationship.[7]

---

[7] This conceded fact touches upon our dissenting colleague's first concern: that there remains a genuine dispute of material fact regarding whether Dr. Martinez gave Cephalon prior express permission to send the faxes. Again, the following is stressed: 1) case law and the FCC both acknowledge that the voluntary provision of a telephone number constitutes *express* permission to be contacted, and 2) PHI—the Plaintiff-Appellant in this case—*conceded* that there was a voluntary provision of a fax number to Defendants. As such, and as explained further below, we find that the voluntary provision of a fax number also constitutes *express permission* to be contacted, and here, there is literally no question, only a concession, that a fax number was voluntarily provided to Defendants, meaning there was express consent to be faxed. Though our dissenting colleague focuses on Dr. Martinez's deposition, Dr. Martinez is neither a plaintiff nor appellant in this case. His testimony is of course relevant, but Plaintiff-Appellant PHI's concession that there is no question of fact regarding the voluntary provision of the business card with a fax number on it is key. Thus, there is no genuine dispute of material fact that need be resolved.

Our dissenting colleague, here, too, believes we have applied the wrong legal standard, permitting *implied* permission to satisfy the TCPA's requirement of *express* permission. He suggests that PHI's conduct of leaving business cards on the receptionist's desk is passive and cannot constitute express consent. He questions this opinion's reliance on our prior

12

But PHI quarrels with the law believing that "express consent" and "express invitation and permission" are different and not interchangeable. PHI argues that "express consent" relates only to telephone calls whereas "express invitation or

precedent in *Daubert* and our references to *Fober* and *KHS Corp*.

We stress that this case does not involve implied permission, but voluntary provision, which has been equated to express consent in the telephone context, and which here, we equate to express consent in the fax context.

There is no question that *Daubert* centered on telephone calls and not faxes. 861 F.3d at 387. But *Daubert*, in a similar vein to this case, addressed situations in which phone calls could be deemed solicited or unsolicited and then either permissible or impermissible in accordance with the TCPA. *Id.* at 389.

Our dissenting colleague is concerned that the FCC's use of "in effect" shows that "releasing a contact number is merely *implied* consent through conduct" but the FCC itself was speaking to the issue of "prior express consent."

Further, consent in this case is buttressed by the fact that the fax number was provided in the first place, namely, so that PHI could be contacted. *See also Fober*, 886 F.3d at 793 ("FCC orders and rulings show that . . . transactional context matters in determining . . . consumer's consent . . . . To fall within the prior express consent exception, a call must relate to the reason why the called party provided his or her phone number" (internal citation and quotation marks omitted)).

13

permission" relates to faxes, that case law about the provision of numbers in telephone situations is inapposite, and that Defendants needed to prove more than the voluntary provision of the fax number to properly meet their burden for summary judgment purposes. We disagree.

### ii. Express Consent and Express Invitation or Permission Are Interchangeable

The plain language of the TCPA shows that "express consent" and "express invitation or permission" are interchangeable and applicable to both phone calls and faxes. Our analysis of the TCPA "is guided by the statute's text, the [FCC's] interpretations of the statute, the statute's purpose, and our understanding of the concept [in question]." *Daubert*, 861 F.3d at 389 (internal citation and quotation marks omitted).

The TCPA does not define either "express consent" or "express invitation or permission," and when phrasing in a statute is undefined, we give it its ordinary meaning. *Id.* "The ordinary meaning of express consent is consent 'clearly and unmistakably stated.'" *Id.* (quoting Black's Law Dictionary 346 (9th ed. 2011)). Consent is "[a] voluntary yielding to what another proposes or desires; agreement, approval, *or permission regarding some act or purpose*, esp. given voluntarily by a competent person; legally effective assent." CONSENT, Black's Law Dictionary 368 (10th ed. 2014) (emphasis added). Similarly, express permission is "clearly and unmistakably granted by actions or words, oral or written," and permission is "the official act of allowing someone to do something." PERMISSION, Black's Law Dictionary 1321-1322 (10th ed. 2014). Notably, the definition of "consent" contains "permission."

14

Further, and as stated above, "[o]n the issue of *prior express consent* the FCC has found that 'persons who knowingly release their phone numbers have in effect given their *invitation or permission* to be called at the number which they have given, absent instructions to the contrary.'" *Daubert*, 861 F.3d at 389 (quoting 7 F.C.C. Rcd. at 8769). Likewise, the FCC has found that calls received after "*prior express invitation or permission*" are not "unsolicited calls." *See In re Rules & Regulations*, 7 F.C.C. Rcd. at 8766 n.47 (defining "telephone solicitation" and using the "prior express invitation or permission" language as opposed to "express consent" language) (emphasis added).[8] The TCPA prohibits telephone calls save in part for those made with "prior express consent." 47 U.S.C. § 227(b)(1)(A)-(B). It also separately defines "telephone solicitation" as the "initiation of a telephone call or message . . . but such term does not include a call or message (A) *to any person with that person's prior express invitation or permission . . . .*" *Id.* § 227(a)(4) (emphasis added). Thus, both the TCPA and the FCC use the two phrases—"express consent" and "express invitation or permission"—interchangeably within the context of telephone calls. And so, why then should the two phrases not be deemed interchangeable in the context of faxes? Express consent and express invitation or permission are interchangeable. Courts have recognized that the FCC deems the knowing release of a phone number in the telephone context can be deemed to

---

[8] The FCC has also noted that: "Express permission to receive a faxed ad requires that the consumer understand that by providing a fax number, he or she is agreeing to receive faxed advertisements." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act (TCPA) of 1991*, 17 F.C.C. Rcd. 14014, 14129 (2003).

15

constitute express consent, invitation, or permission to receive calls.  Here, we extend that reasoning to the realm of faxes (*i.e.*, that the knowing, voluntary release of a fax number, and the receipt of a fax related to why the number was provided, constitutes express consent such that the faxes would be deemed *solicited*).

It is true that the TCPA prohibits faxes save those communicated with "express invitation or permission," and does not say "express consent," but both the language's plain meaning and the FCC's interpretation show that "express consent" is interchangeable with "express invitation or permission."  *Compare id.* § 227(b)(1)(A)-(B), *with id.* § 227(b)(1)(C), *and id.* § 227(a)(4)-(5).  And while the statute has different subsections under "Prohibitions" for telephone calls and faxes, the language used in each subsection—the primary issue here—and as defined elsewhere in the statute, is interchangeable as shown above.  *Compare id.* § 227(a)(4), *with id.* § 227(a)(5) (exemplifying that the statute itself uses "prior express invitation or permission" in both the telephone and fax sections).

While PHI suggests that the District Court "applied the lower standard for 'consent,'" arguing the standards for fax advertisements (those bound by "express invitation or permission") are "more stringent" than those for phone calls, we must disagree.  *See* Appellant's Br. 19–20.  "Express consent" and "express invitation and permission" are synonymous in the context of the TCPA, and accordingly the standards are not different.

The District Court was thus correct in finding that there was undisputed evidence establishing that PHI provided business cards with its fax number to drug company representatives,

thereby giving express consent, invitation, and permission to receive related information, and thus in finding that the two faxes were solicited. *See Physicians Healthsource*, 340 F. Supp. 3d at 452–54.[9]

---

[9] In addition to finding that "PH[I] provided business cards containing its fax number to drug company representatives to enable those representatives to fax information to Dr. Martinez," the District Court also found that there was undisputed evidence that Dr. Martinez himself gave "representatives permission to send him additional information about the subject matters they discussed." *Physicians Healthsource*, 340 F. Supp. 3d at 453. We note that PHI strongly opposes this latter finding. We also note, as did the District Court, that deposition testimony and the general record indicate that Dr. Martinez agreed to receive follow-up information about the drugs discussed with the Defendants. But regardless, the voluntary provision of the fax number by PHI constituted express invitation and permission in and of itself. Thus, absent a definitive expression to *not* be sent any information, which the record does not reflect, the fax number provided is sufficient to establish express invitation and permission. We note here, that we are not, as our dissenting colleague suggests, flipping the burden that a party seeking to prove consent must carry the burden of proof—rather, we are finding that Defendants have met that burden.

Further, as the TCPA indicates, and as the FCC has itself noted, the statute is not meant to curb communication in established business relationships. Though the statute is silent with regard to *solicited* advertisements in the context of an established business relationship, it explicitly permits *unsolicited* fax advertisements so long as there is, in part, "an established

17

**B.     Solicited Faxes Do Not Need to Contain Opt-Out Language**

The TCPA is silent regarding *solicited* faxes. *See generally* 47 U.S.C. § 227. And while it provides one exception to its prohibition on sending *unsolicited* faxes—which in part calls for the inclusion of opt-out notices—the exception is inapplicable here, as we have established the faxes in this case were solicited. *Id.* § 227(b)(1)(C)(i)-(iii). Yet, PHI provides an alternative argument: should we find the faxes were solicited, solicited faxes still require an opt-out notice. For this argument, PHI points not to the TCPA, but to a 2006 FCC rule

---

business relationship" between the sender and the recipient. 47 U.S.C. § 227(b)(1)(C)(i). The FCC has also noted "that facsimile transmission from persons or entities who have an established business relationship with the recipient can be deemed to be invited or permitted by the recipient." *In re Rules & Regulations*, 7 F.C.C. Rcd. at 8779 n.87. Why these two faxes should be curbed, when there was an established practice of drug representatives meeting with, following up with, and providing more information and samples to Dr. Martinez and PHI, defies logic.

Though our dissenting colleague believes this opinion finds that the established-business-relationship ("EBR") exception of the TCPA saves Defendants, this opinion does no such thing. The EBR exception is relevant when faxes are unsolicited. Here, we found that the faxes were solicited, and so the EBR exception does not apply. 47 U.S.C. § 227(b)(2)(D) is thus not relevant to our analysis. For thoroughness, we are only adding that there was indeed an established business relationship in this case.

(the "Solicited Fax Rule") requiring opt-out notices on solicited fax advertisements.[10] PHI argues the District Court was incorrect to assert that it was bound by a D.C. Circuit decision that found the Solicited Fax Rule was "unlawful to the extent that it requires opt-out notices on solicited faxes[.]" *See Physicians Healthsource*, 340 F. Supp. 3d at 449 (quoting *Bais Yaakov of Spring Valley v. Fed. Commc'ns Comm'n*, 852 F.3d 1078, 1083 (D.C. Cir. 2017), *cert. denied* 138 S. Ct. 1043 (2018)); *see also Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991; Junk Fax Prevention Act of 2005*, 71 Fed. Reg. 25,967-01, 25,971-72 (May 3, 2006) (codified at 47 C.F.R. § 64.1200(a)(4)(iv)). But we agree with *Bais Yaakov*, and independently find that the FCC cannot require solicited fax advertisements to include opt-out notices, as the TCPA is silent regarding solicited faxes and opt-out notices.

In *Bais Yaakov*, then-Judge Kavanaugh held "that the FCC's 2006 Solicited Fax Rule [was] . . . unlawful to the extent that it requires opt-out notices on solicited faxes," as the FCC had exceeded its authority under the TCPA, which dealt with "*unsolicited* fax advertisements." 852 F.3d at 1079, 1083. The *Bais Yaakov* decision was the result of the United States Judicial Panel on Multidistrict Litigation's consolidation of multiple petitions by fax senders who were contesting the FCC's Solicited Fax Rule. *See Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 464 (6th Cir. 2017), *cert. denied* 138 S. Ct. 1284 (2018) (providing a thorough review of the procedural history in *Bais Yaakov*). Although the FCC had argued that the TCPA's "requirement that businesses include opt-out notices on *unsolicited* fax

---

[10] The FCC is permitted to "prescribe regulations to implement the requirements of [the TCPA]." 47 U.S.C. § 227(b)(2).

19

advertisements grant[ed] [them] the authority to also require businesses to include opt-out notices on *solicited* fax advertisements," the D.C. Circuit disagreed. *Bais Yaakov*, 852 F.3d at 1081 (emphasis in original). The TCPA has explicit language regarding when opt-out notices are necessary for *unsolicited* faxes, but is silent regarding *solicited* faxes. *Id.* at 1081–82. And the TCPA does not "grant the FCC authority to require opt-out notices on *solicited* fax advertisements." *Id.* at 1082 (emphasis added).

The FCC's 2006 Solicited Fax Rule was in opposition to the TCPA's clear language, and the FCC did not have the ability to regulate solicited faxes:

> Congress drew a line in the text of the statute between unsolicited fax advertisements and solicited fax advertisements. Unsolicited fax advertisements must include an opt-out notice. But the Act does not require (or give the FCC authority to require) opt-out notices on solicited fax advertisements. It is the Judiciary's job to respect the line drawn by Congress, not to redraw it as we might think best. . . . The FCC may only take action that Congress has *authorized*.

*Id.* (internal citation omitted) (emphasis in the original).

There is no question that the plain language of the TCPA indicates that it relates to and regulates "unsolicited" messages. *See, e.g.*, 47 U.S.C. § 227(a)(4)-(5), (b)(1)(A)-(C). And the purpose of the TCPA, in part, is to "curb[] the inundation of 'junk faxes' that businesses . . . receiv[e]." *See Sandusky Wellness*, 863 F.3d at 463 (quoting H.R. Rep. 102-317 at 10 (1991)). Its purpose is not to curb permitted, invited, and

20

consented to—*i.e.*, solicited—faxes. As such, under the TCPA, solicited faxes do not need to contain opt-out notices.[11]

The District Court was thus correct in determining that the Solicited Fax Rule did not apply in this case, and that the two solicited faxes sent did not need to include opt-out language.

---

[11] Sister circuits have found the same, and we also note that certain circuit courts have found the *Bais Yaakov* decision was binding on other circuits. *See e.g.*, *Sandusky Wellness*, 863 F.3d at 467 (citing *Peck v. Cingular Wireless, LLC*, 535 F.3d 1053, 1057 (9th Cir. 2008)); *see also True Health Chiropractic*, *Inc. v. McKesson Corp.*, 896 F.3d 923, 929–30 (9th Cir. 2018) (finding the same); *Physicians Healthsource*, 340 F. Supp. 3d at 450 (collecting district court cases that have held the same); *cf. Brodsky v. HumanaDental Ins. Co.*, 910 F.3d 285, 290 (7th Cir. 2018) (noting that the decision of the D.C. Circuit on the FCC regulation "is binding on all courts of appeals through the Hobbs Act" but finding the decision was "as applied" and "not an untimely attack on the 2006 Order."). We do not need to decide whether the decision was binding on us or not though, as we reach the same conclusion of the *Bais Yaakov* decision—that the 2006 Solicited Fax Rule was unlawful—independently.

Further, of note, the FCC has since eliminated the Solicited Fax Rule. *See* Order, *Petitions for Reconsideration and/or Declaratory Ruling and Retroactive Waiver of 47 C.F.R. § 64.1200(a)(4)(iv) Regarding the Commission's Opt-Out Notice Requirement for Faxes Sent with the Recipient's Prior Express Permission*, 33 F.C.C. Rcd. 11179, 11179 (Nov. 14, 2018).

## IV.  CONCLUSION

We will affirm the District Court's grant of summary judgment in favor of Defendants because there is no genuine dispute of material fact that the two fax advertisements were solicited, and solicited fax advertisements do not require opt-out language.

PORTER, *Circuit Judge*, dissenting.

I respectfully dissent because I believe the majority overlooks genuine disputes of material fact on the central issue of prior express permission, applies the wrong legal standard, and because the established-business-relationship exception to the Junk Fax Prevention Act's express-consent requirement does not apply.

I

There is a genuine dispute of material fact about whether Dr. Martinez or PHI gave Cephalon prior express permission to send the fax advertisements. The majority places significant weight on Dr. Martinez's deposition testimony that PHI's "business cards, with the fax number in question, were made available to drug representatives." Maj. Op. 5–6. The use of passive voice in that sentence is telling: Like most physician practices, PHI simply leaves business cards in the reception area for patients and anyone else to pick up. JA 200. There is no evidence that PHI or Dr. Martinez specifically gave business cards to Cephalon's drug representatives as an express grant of permission to send fax advertisements. Of course, there are many reasons why physicians make their business cards available to patients and others who enter the office. But it is not apparent on this record that PHI did so expressly to solicit fax advertisements from Cephalon. I think the majority too easily finds express permission from a fact that is ambiguous at best. *See, e.g.*, Maj. Op. 11 ("Here, it is undisputed that PHI voluntarily provided a business card with a fax number on it to Defendants[.]").

During his deposition, Dr. Martinez was also queried whether Cephalon's visiting representatives would "sometimes" ask if they could follow up and send him "things." JA 194. Dr. Martinez answered affirmatively—yes, the representatives sometimes asked that question. But the deposition examiner's question was so indeterminate ("sometimes" asked?) and nondescript (what are "things"?) that it obscures rather than illuminates.

The examiner chose not to ask Dr. Martinez the obvious follow-up question: Did the Cephalon representatives with

1

whom Dr. Martinez spoke ask if they could send him the fax advertisements at issue? In any event, Dr. Martinez later explained that he never "specifically requested" the two fax advertisements in dispute. JA at 217. So I cannot agree with the majority's suggestion that this deposition snippet shows that Dr. Martinez agreed to receive follow-up information about the drugs discussed with Cephalon's representatives. Maj. Op. 11 n.6; *see also Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, — F.3d —, 2020 WL 881329, at *3 (7th Cir. Feb. 24, 2020) (noting FCC regulations interpreting "express permission to receive a faxed ad requires that the consumer understand that by providing a fax number, he or she is agreeing to receive fax advertisements").[1] I especially cannot agree because we must draw all reasonable inferences in favor of Dr. Martinez and PHI, the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.") (citation omitted).

The majority contends, however, that "PHI concedes that 'at best, [Cephalon] marshalled enough evidence at summary judgment to show … *[PHI's] voluntary communication*' of its fax number to [Cephalon]." Maj. Op. 5 (quoting Appellant's Br. 24); *see also* Maj. Op. 12 n.7 ("[T]here is literally no question, only a concession, that a fax number was voluntarily provided to Defendants[.]"). Passively providing a fax number to the general public—even voluntarily—is not equivalent to express permission. And the majority also acknowledges that PHI "strongly opposes" the finding that Dr. Martinez gave Cephalon express permission to send him the faxed advertisements. *See id.* at 17 n.9.

In any event, there is no concession. PHI's brief merely allows that "*at best*" Cephalon showed "an established business relationship and the voluntary communication of its fax number." Appellant's Br. 24 (emphasis added) (internal quotation marks omitted). Although the summary-judgment

---

[1] The majority notes the difference between our case and *A-S Medication* by emphasizing the difference between the number of fax advertisements sent. *See* Maj. Op. 11 n.6. What these two cases have in common, however, is that neither party gave express permission to receive the fax advertisements.

2

standard prohibits us from viewing the evidence in Cephalon's favor, the majority draws this inference against the non-moving party. *See Anderson*, 477 U.S. at 255.

Nothing in the record shows that Dr. Martinez expressly permitted Cephalon to send him fax advertisements or even other, unidentified "things." JA 194. Because a genuine dispute of material fact exists on this issue, I believe that summary judgment is inappropriate.

II

Aside from the material factual disputes, the majority's legal standard incorrectly allows *implied* permission to satisfy the TCPA's requirement of *express* permission.

I agree with the majority that the TCPA's terms "express consent" and "express permission" have interchangeable meanings. *See* Maj. Op. 14. "The ordinary meaning of express consent is consent 'clearly and unmistakably stated.'" *Id.* (quoting *Express consent*, Black's Law Dictionary 346 (9th ed. 2011)). By contrast, the ordinary meaning of implied consent is "consent inferred from one's *conduct rather than one's direct expression.*" *Implied consent*, Black's Law Dictionary (11th ed. 2019) (emphasis added).

Here, the majority concludes that PHI's conduct—passively leaving business cards on a receptionist's desk—expressly permitted Cephalon representatives to send fax advertisements to Dr. Martinez. *See* Maj. Op. 17 n.9 ("[T]he voluntary provision of the fax number by PHI constituted express invitation and permission in and of itself."); *id.* at 16–17 ("PHI provided business cards with its fax number to drug company representatives [by leaving them on a desk], thereby giving express consent, invitation, and permission to receive related information[.]"). But PHI did not "clearly and unmistakably" give its permission to receive fax advertisements by leaving business cards on a receptionist's desk. Rather, the majority can only infer from PHI's conduct that Dr. Martinez gave permission. The majority's conclusion conflates the plain meanings of *express* and *implied* consent.

The majority's reliance on our decision in *Daubert v. NRA Group, LLC* does not save its misinterpretation of the

3

TCPA's unambiguous text. In *Daubert*, we noted that an FCC regulation on prior express consent provided that "persons who knowingly release their phone numbers have *in effect* given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." 861 F.3d 382, 389 (3d Cir. 2017) (emphasis added) (quoting *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, 8769 (1992)).

The FCC regulation's use of the phrase "in effect" shows that knowingly releasing a contact number is merely *implied* consent through conduct. One can give consent "expressly" or he can do so "in effect," but those words are not synonymous. The regulation thus appears to violate the TCPA's requirement of express consent.

But in *Daubert* we recognized that the FCC adopted the regulation under its authority to exempt from the TCPA's express-consent requirement certain calls to cell phones. 861 F.3d at 389–90; *see also* 47 U.S.C. § 227(b)(2)(C). Here, the FCC lacks statutory authority to exempt fax advertisements from the express-permission requirement. So *Daubert*'s reasoning—and the FCC's regulation creating an exemption in the cell phone context—is not applicable.[2] Neither our precedent nor the statute's text provides any reason to ignore the plain meanings of express and implied consent.

The majority implicitly places the burden on PHI and Dr. Martinez to opt out of unsolicited fax advertisements. *See* Maj. Op. 5 ("Dr. Martinez never told Cephalon or its representatives to stop sending [the fax advertisements]."); *id.* at 17 n.9 ("[A]bsent a definitive expression to *not* be sent any information … the fax number provided is sufficient to establish express invitation and permission."). This conclusion

---

[2] Here, the majority opinion largely adopts the reasoning of the District Court, which relied on *KHS Corp. v. Singer Financial Corp.*, No. 16-55, 2018 WL 4030699, at *4 (E.D. Pa. Aug. 23, 2018). *KHS* relied on *Daubert*. But the district court in *KHS* failed to recognize that the FCC's statutory authorization to exempt calls from the express-consent requirement did not give it authority to exempt fax advertisements from the express-permission requirement.

4

flips the well-established burden that a party seeking to prove consent—and thus express permission—must carry the burden of proof. *See Daubert*, 861 F.3d at 390; *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931–32 (9th Cir. 2018).

III

Finally, the established-business-relationship ("EBR") exception does not save Cephalon's fax advertisements from violating the TCPA. The majority notes that the TCPA "explicitly permits *unsolicited* fax advertisements so long as there is, in part, 'an established business relationship' between the sender and the recipient." Maj. Op. at 17 n.9. The majority then asserts, "Why these two faxes should be curbed, when there was an established practice of drug representatives meeting with, following up with, and providing more information and samples to Dr. Martinez and PHI, defies logic." *Id.* at 18 n.9.

The reason why the two fax advertisements should be curbed is simple: They do not satisfy the TCPA's requirements for unsolicited faxes under the EBR exception.[3] The EBR exception applies only if three criteria are met. The third criterion is that "the unsolicited advertisement contains a notice" satisfying certain requirements. 47 U.S.C. § 227(b)(1)(C)(iii). One requirement is that an unsolicited fax include an opt-out notice. *See* 47 U.S.C. § 227(b)(2)(D)(ii)–(vi).

Cephalon's fax advertisements to Dr. Martinez did not contain any opt-out notice, let alone one in compliance with 47 U.S.C. § 227(b)(2)(D). That should dispense any discussion of the EBR exception. Although I may agree with the majority that the exclusion of these fax advertisements "defies logic," we should not defy the requirements of a statute passed by Congress.

---

[3] Given the majority's finding that PHI solicited the fax advertisements by putting its doctors' business cards at the reception desk, its discussion of the established business relationship exception is puzzling.

\* \* \*

For these reasons, I respectfully dissent.