**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 23-2530

DANIEL PEKOL,

Appellant

v.

CSL BEHRING LLC

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 2-21-cv-04404)
District Judge: Honorable Cynthia M. Rufe

Submitted Under Third Circuit L.A.R. 34.1(a)
on May 3, 2024

Before:  KRAUSE, CHUNG and AMBRO, <u>Circuit Judges</u>

(Opinion Filed:  May 6, 2024)

## OPINION*

**AMBRO**, <u>Circuit Judge</u>

CSL Behring ("CSL") terminated its employee, Daniel Pekol, after conducting an internal investigation and determining he both engaged in inappropriate behavior toward coworkers and failed to adhere to company standards while accessing CSL's secure email platform (the "restricted account"). Pekol filed a complaint in the United States District Court for the Eastern District of Pennsylvania alleging CSL terminated his employment because of his sex and age and retaliated against him for engaging in protected activity, all in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*. District Judge Rufe granted summary judgment in favor of CSL and against Pekol. He appeals to us. For the reasons that follow, we will affirm Judge Rufe's well-reasoned decision.

## I.     BACKGROUND

CSL, a bio-pharmaceutical company, employed Pekol in technology security from January 2007 until August 2020 when CSL terminated him. It made him a supervisor in 2016 and later hired Ellyn Schneck to work on Pekol's team. Based on coworker Rebecca Daniels' recommendation and the desire by Pekol's supervisor, Edward Ferrara,

---

\* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

for more diversity, CSL picked Schneck over a male candidate recommended by Pekol. He supervised Schneck until she transferred from his team in October 2019.

Several months later, Schneck reported to Human Resources that she left Pekol's team because he created an intolerable and toxic work environment. Based on this allegation, Human Resources launched an internal investigation into Pekol's behavior and interviewed 17 employees. According to Pekol's coworkers, he was abrasive, relentless, and intimidating. An employee specifically remembered incidents where Pekol aggressively banged on Schneck's keyboard and pushed her rolling chair. CSL determined that Pekol violated its policies by creating a toxic work environment and suspended him.

During his suspension, CSL researched additional allegations raised during the investigation that Pekol inappropriately gained access to the restricted account. It found that his access to it was appropriate and permissible, but the steps he took to gain access violated its standards for employee conduct.

Ferrara terminated Pekol in August 2020. According to Pekol, this was discriminatory and part of a conspiracy to fire him. He filed in October 2021 a complaint in the District Court alleging CSL terminated his employment based on sex and age and retaliated against him for engaging in protected activity, in violation of Title VII and the ADEA. CSL moved for summary judgment on all claims. In Pekol's opposition, he responded only as to his Title VII sex-discrimination claim.

The District Court granted CSL summary judgment as to all claims in July 2023. Pekol subsequently filed a notice of appeal only for the grant of summary judgment on his Title VII claim.

## II.     JURISDICTION AND STANDARD OF REVIEW

The District Court had subject matter jurisdiction under 28 U.S.C. § 1331.  Our jurisdiction is from 28 U.S.C. § 1291.  "We review the District Court's disposition of a summary judgment motion *de novo*, applying the same standard as the District Court." *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Doe v. Luzerne County*, 660 F.3d 169, 174 (3d Cir. 2011)).  Accordingly, per Federal Rule of Civil Procedure 56(a), summary judgment should be affirmed where there is no genuine issue of material fact for the jury to decide.  *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020).

## III.    DISCUSSION

Pekol asserts that the District Court erred in granting summary judgment because he established the elements of a *prima facie* case for sex discrimination and demonstrated that the reasons CSL terminated him were pretextual.  However, the evidence he provided to support his claim is not enough to survive summary judgment.

Claims under Title VII that lack any direct evidence of discrimination are analyzed under the test developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).  Following this framework, Pekol can establish a *prima facie* case by showing 1) he belongs to a protected class, 2) he was qualified for the position, 3) he was subject to an adverse employment action, and 4) this occurred in circumstances giving rise to an

4

inference of discriminatory motive. *See id*. The fourth element can be established either by evidence of comparators who were treated more favorably than him or, more broadly, through circumstantial evidence that shows a causal link between his membership in a protected class and the adverse employment action. *Sarullo v. U.S. Postal Serv.,* 352 F. 3d 789, 797-98 & n.7 (3d Cir. 2003); *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 327 (3d Cir. 2015). While Pekol satisfies the first three requirements of a *prima facie* case for sex discrimination, he has failed to introduce evidence that raises an inference of discriminatory motive.

Pekol asserts that the evidence he provided does create an inference of discrimination. It included Ferrara's testimony that Karen Etchberger, an upper-level CSL employee, did not provide him with adequate information before directing him to terminate Pekol and that Pekol's restricted system access was proper and appropriate, plus an email Ferrara sent Pekol stating regret for any role in firing him. Pekol also points to Ferrara's testimony expressing his desire to diversify his team and hire more women in his department.

In addition, Pekol continues to claim there was a conspiracy among Etchberger, Schneck, and Daniels to terminate him. In support, he provided the following evidence: Ferrara's testimony that Etchberger was the driving force of the termination, Daniels's email stating she had a "plan" for Pekol, and Schneck's decision to wait over seven months to report Pekol's misbehavior toward her. Pekol argues this supports a "cat's paw" theory of discrimination, which allows employer liability to attach if a non-decisionmaker's discriminatory act serves as the proximate cause for an adverse

5

employment action. *Staub v. Proctor Hosp.,* 562 U.S. 411, 419 (2011); *Jones,* 796 F.3d at 330. Specifically, he alleges Schneck falsely reported she left his team because of the intolerable environment, and this provided Etchberger with an excuse to terminate him.

This evidence is unpersuasive. Although Ferrara stated the restricted system access was proper, the investigation CSL conducted concluded that the steps Pekol took to gain access violated its standards for employee conduct. Moreover, he was terminated for more than alleged improper system access. The investigation revealed his behavior created a "toxic work environment" in violation of CSL's policies. App. at 123. Pekol's co-workers claimed his behavior was "condescending, intrusive, demeaning, disrespectful, argumentative, deceptive and untrustworthy," App. at 123, corroborating Schneck's accusations.

In addition, as the District Court explained, Ferrara's expressed desire to diversify the staff does not in turn indicate a bias against men. An "employer has every right to be concerned with the diversity of its workforce." *Iadimarco v. Runyon,* 190 F.3d 151, 164 (3d Cir. 1999).

Finally, the evidence of a conspiracy between Etchberger, Schneck, and Daniels to fire Pekol is scarce and unconvincing. The email Daniels sent regarding a "plan" was in reference to accessing a specific office account and does not demonstrate she had ill intent toward Pekol. Moreover, even if the conspiracy were substantiated, there is no evidence it was motivated by Pekol's sex. Notwithstanding whether Etchberger was the driving force of his termination, nothing indicates it was because Pekol is a man. In sum, there is not enough evidence to support an inference of discriminatory intent.

6

Although the failure to establish a *prima facie* case is sufficient to grant summary judgment to an employer, we will complete the analysis under the *McDonnell Douglas* framework. If Pekol could establish a *prima facie* case, the burden would then shift to CSL to articulate a legitimate nondiscriminatory reason for his termination. *McDonnell Douglas*, 411 U.S. at 802-03. Here, it offered such a reason—an internal investigation substantiating allegations that Pekol violated company policies.

The burden then shifts back to Pekol to prove the legitimate reasons offered by CSL were a pretext for discrimination. *Id.* at 804. To do so, he relies on much of the same evidence that he argues supports an inference of discrimination. Specifically, he focuses on Ferrara's testimony and the allegation that Schneck's complaints were related to the "plan" Daniels had for Pekol. Again, this evidence is not persuasive and fails to support the allegations that CSL terminated him because of his sex.

Pekol further asserts the investigation was unfair, and therefore pretextual, because CSL failed to interview 15 of the 18 individuals he proposed as witnesses. But, as the District Court determined, CSL provided an adequate reason for not interviewing all of Pekol's proposed witnesses: they were outside the relevant group and beyond the scope of the investigation. In any event, Human Resources interviewed Pekol and numerous other employees. Nothing indicates its conduct was unfair. What it discovered amply supported Pekol's termination.

We thus affirm the District Court's grant of summary judgment.