PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 16-3613 and 16-3629
_____

JOHN DAUBERT,
Cross-Appellant in No. 16-3629

v.

NRA GROUP, LLC, d/b/a National Recovery Agency,

NRA Group, LLC,
Appellant in No. 16-3613
_____


On Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. No. 3-15-cv-00718)
District Judge:  Honorable A. Richard Caputo


_____


Argued May 23, 2017
Before:  HARDIMAN, ROTH, and FISHER, *Circuit Judges*.

(Filed: July 3, 2017)

Richard J. Perr        [ARGUED]
Fineman Krekstein & Harris
Ten Penn Center
1801 Market Street, Suite 1100
Philadelphia, PA 19103

Brett M. Freeman
Carlo Sabatini        [ARGUED]
Sabatini Law Firm
216 North Blakely Street
Dunmore, PA 18512

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

This case — involving tens of thousands of dollars in statutory damages, half a jury trial, and cross-appeals — stems from a debt collector's pursuit of $25 in unpaid medical bills. John Daubert won summary judgment on his Telephone Consumer Protection Act (TCPA) claim against NRA Group, LLC but he lost at trial on his Fair Debt Collection Practices Act (FDCPA) claim. NRA appeals. Daubert cross-appeals. We'll affirm on the TCPA claim but reverse and remand on the FDCPA claim.

**I**

It started with lower-back pain. Daubert went to Wilkes-Barre General Hospital for treatment. The Hospital's radiology department, operated by Radiology Associates of Wyoming

2

Valley, x-rayed him. His bill was $46. Radiology Associates forwarded his medical report and cellphone number to the company that billed its patients, Medical Billing Management Services, or MBMS. Daubert's health-insurer contributed $21, so Daubert was responsible for the remaining $25. He apparently didn't pay (it's unclear why). So MBMS transferred his account to a debt collector, NRA, passing along Daubert's cell number.

NRA attempted to collect the $25 that Daubert owed Radiology Associates in two ways. First, it sent him a collection letter through an independent vendor. Visible through glassine windows on the envelope were — Daubert alleged — the bare sequence of letters and numbers NRA used to keep track of Daubert's collection account in its system and — undisputedly — a barcode that, when scanned by the appropriate reader, revealed that account number. Second, NRA called Daubert sixty-nine times in ten months. He answered just once. Each call was made using a Mercury Predictive Dialer. Calls were made according to campaigns created by Charlene Sarver, NRA's collections director. Campaigns used preselected criteria to pick the accounts and phone numbers the Dialer could access.

Daubert sued NRA in Pennsylvania state court. He alleged violations of the FDCPA, 15 U.S.C. § 1692 *et seq.* The bare account number and barcode on the collection letter's envelope, he claimed, could've revealed his private information. NRA removed the case to the District Court and filed an answer pressing a "bona fide error" defense to Daubert's FDCPA claim. *See* 15 U.S.C. § 1692k(c).

A month before discovery's end Daubert filed a motion to amend his complaint. Based on the sixty-nine calls he received and the Dialer's automation he wanted to allege a violation of the TCPA, 47 U.S.C. § 227. NRA opposed the

3

motion but the District Court granted it. So NRA amended its answer adding a "prior express consent" defense to Daubert's new TCPA claim. *See id.* § 227(b)(1)(A)(iii).

Daubert served NRA with a deposition notice under Federal Rule of Civil Procedure 30(b)(6). It was delivered two weeks before the deposition was to occur. It said NRA was to pick a witness ready to testify on its behalf about things germane to Daubert's FDCPA and TCPA claims. For his TCPA claim Daubert wanted information about any automated dialing system NRA used to call third parties.

NRA designated Anita Schaar, director of payment processing, as its 30(b)(6) witness. At her deposition she was asked, "Are you able to testify about all the information known or readily available to NRA Group, LLC about [the] topics [in the 30(b)(6) notice]?," to which she responded, "Yes." J.A. 153. She was asked, "Is there anything you think you could have done to have prepared more for today's deposition?" J.A. 154. She said, "No, I don't think so," but mentioned she could've spoken to her coworker Charlene Sarver who "might" have had "more technical information" about the Dialer than she. J.A. 155. Schaar went on to explain how NRA's employees only generate calling campaigns. The Dialer, she said, is otherwise fully automated:

> Q.      . . . So how is a phone call placed through the dialer system?
>
> A.      There is a campaign created.
>
> Q.      And this is the type of campaign that Charlene [Sarver] would create?
>
> A.      Yes . . . .

4

Q. Is a human being involved in the placement of any phone calls made on the dialer, with the exception of creating a campaign?

A. I — I don't know. I don't think there's any other way to — no. The dialer does the dialing.

Q. Okay. So a human being selects the campaign criteria but then the dialer actually places the phone call?

A. Correct.

Q. Okay. When does an employee of NRA first get involved in a phone call that's been placed?

A. When someone answers the phone . . . .

Q. . . . If a phone call is not answered by a debtor, is an NRA employee ever involved in that phone call?

A. No.

J.A. 198–99, 206–207.

When discovery closed Daubert asked for summary judgment on his FDCPA and TCPA claims. For his TCPA claim he cited, among other things, Schaar's 30(b)(6) testimony and his own affidavit saying he "never provided" Radiology Associates or NRA his cell number or "permission" to call his cell number. J.A. 137–38.

In opposing Daubert's summary-judgment motion NRA submitted an affidavit it didn't produce during discovery. It was from Charlene Sarver. There Sarver contradicted Schaar's

5

30(b)(6) testimony. The Dialer can't make phone calls without "human intervention," she said, as a person must first "hit the 'F4' key on a keyboard." J.A. 380. Doing so triggers the Dialer, she claimed, causing it to "go through the accounts" stored in NRA's system to select one meeting a campaign's criteria. *Id.* "Without a collector hitting the 'F4'" key, she swore, the Dialer "cannot make a phone call." *Id.*

The District Court granted Daubert summary judgment on his TCPA claim. Relying in part on Schaar's 30(b)(6) testimony the court found no genuine dispute that NRA violated the TCPA by autodialing Daubert's cellphone sixty-nine times without his prior express consent. Applying the sham-affidavit doctrine the court declined to consider Sarver's contradictory affidavit, binding NRA to Schaar's 30(b)(6) testimony. Daubert was owed $500 in statutory damages for each TCPA violation ($500 × 69 calls = $34,500). *See* 47 U.S.C. § 227(c)(5)(B).

The court, however, denied Daubert summary judgment on his FDCPA claim. It held that while the barcode undisputedly visible through the envelope violated the FDCPA, a reasonable jury could conclude that NRA relied in good faith on two federal district court decisions deeming similar barcodes legal under the FDCPA. So a genuine, material factual dispute existed on whether NRA's FDCPA violation was "not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid" it. 15 U.S.C. § 1692k(c). A jury trial was scheduled to resolve that dispute.

At trial NRA moved for judgment as a matter of law on Daubert's FDCPA claim under Rule 50(a). Despite finding that whether the account number was visible alongside the barcode was a "clear jury question," J.A. 677, the court granted the motion, holding that no reasonable jury could find that either

6

alleged FDCPA violation resulted from anything other than an unintentional, bona fide error. With that the court discharged the jury and entered final judgment. These appeals followed.

**II**

The District Court had jurisdiction under 28 U.S.C. § 1331. We have it under 28 U.S.C. § 1291.

We review orders granting summary judgment *de novo*. *Steele v. Cicchi*, 855 F.3d 494, 500 (3d Cir. 2017). Summary judgment is warranted if the moving party shows there's "no genuine dispute as to any material fact" and he's "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the facts in the light most favorable to the nonmoving party, drawing all inferences in its favor. *Steele*, 855 F.3d at 500.

Though we've yet to say so expressly, we review a district court's decision to exclude materials under the sham-affidavit doctrine for abuse of discretion. *See Hackman v. Valley Fair*, 932 F.2d 239, 241 (3d Cir. 1991) (A court "may" disregard an affidavit under the doctrine.); *cf. EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 267–70 (3d Cir. 2010) (Courts "may, in their discretion, choose to allow contradictory changes" to deposition testimony.). Most courts of appeals do the same. *See Escribano-Reyes v. Prof'l HEPA Certificate Corp.*, 817 F.3d 380, 386 (1st Cir. 2016); *France v. Lucas*, 836 F.3d 612, 622 (6th Cir. 2016); *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 867 (8th Cir. 2010); *Yeager v. Bowlin*, 693 F.3d 1076, 1079 (9th Cir. 2012); *Law Co. v. Mohawk Constr. & Supply Co.*, 577 F.3d 1164, 1169 (10th Cir. 2009); *Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333, 1337, 1342–43 (11th Cir. 2000); *cf. Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004) ("We review for an abuse of discretion the district court's decision to disregard parts of a plaintiff's affidavit.").

*But see Galvin v. Eli Lilly & Co.*, 488 F.3d 1026, 1030 n.* (D.C. Cir. 2007) (suggesting *de novo* review applies).

**III**

**A**

NRA first says the District Court was wrong to grant Daubert summary judgment on his TCPA claim. A reasonable jury, it argues, could find that Daubert gave his "prior express consent" to receive calls about his bill. We disagree.

"Congress passed the TCPA to protect individual consumers from receiving intrusive and unwanted calls." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 268 (3d Cir. 2013); *see Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372–73 (2012). To that end the TCPA bars "any person within the United States" from making calls to a phone number assigned to a "cellular telephone service" using an "automatic telephone dialing system." 47 U.S.C. § 227(b)(1)(A)(iii). Excepted from this proscription are calls made with the "prior express consent of the called party." *Id.* That language is in issue here. Our analysis of the TCPA's scope is guided by the statute's text, the Federal Communications Commission's (FCC's) interpretations of the statute, the statute's purpose, and "our understanding of the concept of consent as it exists in the common law." *Gager*, 727 F.3d at 268.

Starting with the statute's text we note Congress left "prior express consent of the called party" undefined. When a phrase goes undefined in a statute we give it its ordinary meaning. *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 556 (3d Cir. 2017). The ordinary meaning of express consent is consent "clearly and unmistakably stated." Black's Law Dictionary 346 (9th ed. 2011); *see Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009).

8

We next look to the FCC's rulings interpreting the TCPA. Congress requires the FCC to "prescribe regulations to implement the [TCPA's] requirements." 47 U.S.C. § 227(b)(2). The FCC "may, by rule or order," exempt from § 227(b)(1)(A)(iii) certain calls made to cellphones. *Id.* § 227(b)(2)(C). It has done so. On the issue of prior express consent the FCC has found that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." 7 F.C.C. Rcd. 8752, 8769 (1992). The FCC later added that "autodialed . . . calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party." 23 F.C.C. Rcd. 559, 559 (2008) [hereinafter *2008 Ruling*]. In other words, the FCC says, the "provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt" if the number was provided "during the transaction that resulted in the debt owed." *Id.* at 564–65. Further, "[c]alls placed by a third party creditor on behalf of that creditor are treated as if the creditor itself placed the call." *Id.* at 565.

That the cell number wasn't provided directly to the creditor, however, isn't dispositive under the FCC's rulings. The "appropriate analysis turns on whether the called party granted permission or authorization" to be called, "not on whether the creditor received the [cell] number directly." *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1123 (11th Cir. 2014). So a cellphone subscriber "could provide his number to a creditor" and "grant prior express consent to receive autodialed or prerecorded calls" by "affirmatively giving an intermediary like [a hospital] permission to transfer the number to [his

9

creditor] for use in billing." *Id.* at 1124. The FCC's rulings "make no distinction between directly providing one's cell phone number to a creditor and taking steps to *make that number available* through other methods, like consenting to disclose that number to other entities for certain purposes." *Baisden v. Credit Adjustments, Inc.*, 813 F.3d 338, 346 (6th Cir. 2016).

Turning to the TCPA's purpose we reiterate that the statute is remedial in nature and "should be construed to benefit consumers." *Gager*, 727 F.3d at 271; *see Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 327 (3d Cir. 2015).

Finally we reaffirm that Congress "did not intend to depart from the common law understanding of consent." *Gager*, 727 F.3d at 270. The statute doesn't treat the term differently from its common law usage under which the basic premise of consent is that it's "given voluntarily." *Id.* (quoting Black's Law Dictionary 346 (9th ed. 2009)); *accord Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1252–53 (11th Cir. 2014).

Applying these principles we agree with the District Court that no reasonable jury could find that Daubert expressly consented to receive calls from NRA about his $25 debt. As the party claiming Daubert's "prior express consent" NRA would've been required to prove it at trial. *See 2008 Ruling*, 23 F.C.C. Rcd. at 565; *cf. Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355, 366 (3d Cir. 2015) (citing *Osorio*, 746 F.3d at 1253). So to carry his burden as the party seeking summary judgment Daubert needed to show the "*absence* of a genuine issue of material fact" on his prior express consent. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (emphasis added); *see* Fed. R. Civ. P. 56(c)(1)(B). This he did.

There's no direct evidence Daubert gave his prior express consent to receive calls to Radiology Associates (his creditor).

The circumstantial evidence suggests, and Daubert concedes it's reasonable to infer, that he gave his cell number to the Hospital (an intermediary associated with his creditor) when he was admitted there. But we agree with the District Court that more is required to show a genuine dispute on prior express consent. *Baisden* and *Mais* persuade us.

The Sixth Circuit found prior express consent where the plaintiffs gave their cell numbers to a hospital-intermediary in signing admittance forms. *Baisden*, 813 F.3d at 340–41. Those forms said, for instance, "I understand" the hospital "may use my health information" for "billing and payment," *id.* at 340 (emphasis removed), and may "release my health information" to "companies who provide billing services" (i.e., creditors), *id.* at 341 (emphasis removed). Similarly the Eleventh Circuit found prior express consent where the plaintiff's wife gave her husband's cell number to a hospital-intermediary in signing admittance forms on his behalf. *Mais*, 768 F.3d at 1113–14. Those forms gave the hospital permission to, for example, "release" his "healthcare information" for the purpose of "payment," *id.*, to "use and disclose" his "health information" to "bill [him] and collect payment," and to "disclose" his "health information" to its "business associate[s]" (i.e., creditors) so they could "bill" him, *id.* at 1114.

Daubert, of course, could've indicated on his Hospital intake form (assuming one exists) that he consented to have his number transferred to Radiology Associates for billing or other purposes. But no evidence of such prior express consent exists in the record. By pointing that out, we hold, Daubert carried his burden as the movant to show the absence of a genuine, material factual dispute on NRA's prior express consent defense. *See Celotex*, 477 U.S. at 323.

11

The burden thus shifted to NRA as the nonmovant to "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there *is* a genuine issue for trial." *Celotex*, 477 U.S. at 324 (emphasis added; internal quotation marks omitted); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). So NRA is incorrect that the District Court "flipped" the summary-judgment standard. NRA Br. 18. It didn't. Rule 56 did. And under that rule NRA had to do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. It was "put up or shut up time" for NRA as the nonmovant. *Berckeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). NRA managed to show only that Daubert maybe provided his cell number to the Hospital, an intermediary associated with Radiology Associates. In light of *Baisden*, *Mais*, and the FCC's rulings, we don't think that's enough. The court rightly held that no reasonable jury could find that Daubert expressly consented to receive calls about his bill from NRA.

**B**

NRA next says the District Court was wrong to disregard Charlene Sarver's affidavit under the sham-affidavit doctrine. Her written statement, NRA claims, bars summary judgment for Daubert on his TCPA claim because it shows a genuine dispute about whether he was called using an "automatic telephone dialing system." We disagree.

When a nonmovant's affidavit contradicts earlier deposition testimony without a satisfactory or plausible explanation, a district court may disregard it at summary judgment in deciding if a genuine, material factual dispute exists. *See Hackman*, 932 F.2d at 241; *Jiminez v. All Am.*

12

*Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). This is the sham-affidavit doctrine. In applying it we adhere to a "flexible approach," *Jiminez*, 503 F.3d at 254, giving due regard to the "surrounding circumstances," *Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004).

If, for example, the witness shows she was "confused at the earlier deposition or for some other reason misspoke, the subsequent correcting or clarifying affidavit may be sufficient to create a material dispute of fact." *Martin v. Merrell Dow Pharm., Inc.*, 851 F.2d 703, 705 (3d Cir. 1988); *see Jiminez*, 503 F.3d at 254. Same result if there's "independent evidence in the record to bolster an otherwise questionable affidavit." *Baer*, 392 F.3d at 625.

The court may, on the other hand, disregard an affidavit when the "affiant was carefully questioned on the issue, had access to the relevant information at that time, and provided no satisfactory explanation for the later contradiction." *Martin*, 851 F.2d at 706; *see Jiminez*, 503 F.3d at 254. It may similarly disregard an affidavit "entirely unsupported by the record and directly contrary to [other relevant] testimony," *Jiminez*, 503 F.3d at 254, or if it's "clear" the affidavit was offered "solely" to defeat summary judgment, *id.* at 253; *see In re CitX Corp., Inc.*, 448 F.3d 672, 679 (3d Cir. 2006); *Martin*, 851 F.2d at 705.

The District Court, we hold, acted well within its discretion to disregard Sarver's affidavit. Her sworn written statement flatly contradicted Schaar's earlier 30(b)(6) testimony. Schaar testified that the Dialer can make calls without human intervention. Sarver later swore it can't. So NRA had to give the District Court a "satisfactory explanation" for this discrepancy. *Hackman*, 932 F.2d at 241. It didn't.

NRA, for instance, failed to point the District Court to any "independent evidence in the record" corroborating Sarver's

affidavit. *Baer*, 392 F.3d at 625. None exists. NRA admitted that much in its brief opposing summary judgment. There it noted that apart from Schaar's 30(b)(6) testimony and Sarver's affidavit, there's "absolutely no mention" of the Dialer "in the factual record." J.A. 360. Why? NRA blamed Daubert: He never asked for the Dialer's "detailed specifications" or "even something as simple as the model number." *Id.* But even if that's true, NRA could've asked for a chance to supplement the record before the District Court ruled on Daubert's summary-judgment motion. *See* Fed. R. Civ. P. 56(d)(2) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the district court "may allow time to obtain affidavits or declarations or to take discovery."); *Shelton v. Bledsoe*, 775 F.3d 554, 568 (3d Cir. 2015). It didn't. We're left to conclude that no independent record evidence corroborates Sarver's contradictory affidavit.

NRA also made no serious effort to explain to the District Court why it believed Schaar was "'understandably' mistaken, confused, or not in possession of all the facts" about the Dialer during her deposition. *Jiminez*, 503 F.3d at 254. NRA knew Daubert wanted information about, for instance, "[e]ach system" that's an "automatic telephone dialing system" or that can place a call "without any human contemporaneously dialing the telephone number." J.A. 245. NRA had two weeks to pick and prepare a witness to testify on its behalf about these matters. It picked Schaar. She testified she was ready, willing, and able to speak for her company about the topics listed in the 30(b)(6) notice. And she did exactly that. More than once she said the Dialer is automated unless someone answers the call on the other end. So her testimony belies what NRA told the District Court in submitting Sarver's contradictory affidavit: that Schaar had "no technical knowledge about the inner workings of the

14

phone system," J.A. 356, and "no information at all about the telephone system," J.A. 359. The District Court didn't abuse its discretion by disregarding these explanations.

NRA uses a similar strategy on appeal. It says Schaar "made it abundantly clear" to Daubert's counsel during her deposition that "she was not prepared to discuss the technical aspects of the Mercury Dialer, had no personal information about the Mercury Dialer, and that [Daubert's] counsel was better off speaking with Ms. Sarver about these issues." NRA Third Step Br. 31. But that's not true. Schaar said she "[m]aybe" could've spoken to Sarver who "might" know more about the Dialer than she and that doing so would've taken her "[m]aybe 30 minutes." J.A. 155–56. These contentions, like NRA's contentions to the District Court, don't show that Schaar was understandably mistaken, confused, or not in possession of all the facts. Nor do they show an abuse of discretion.

No satisfactory explanation was offered for Sarver's contradictory affidavit. The District Court didn't abuse its discretion in declining to indulge NRA's attempt to paper over Schaar's damning 30(b)(6) testimony with Sarver's affidavit. NRA raises no other challenges, so we'll affirm summary judgment for Daubert on his TCPA claim. We move to Daubert's cross-appeal.

**C**

Daubert contests the District Court's decision to grant NRA judgment as a matter of law on his FDCPA claim. NRA's bona fide error defense founders, he says, because it's premised on a mistake of law. We agree.

Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 301 (3d Cir. 2014) (quoting 15

15

U.S.C. § 1692(e)). To further that goal the FDCPA bars debt collectors from using "unfair or unconscionable means" to collect a debt. 15 U.S.C. § 1692f. Subparagraph 8, in issue here, prohibits debt collectors from "[u]sing any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business." *Id.* § 1692f(8).

We've held that a debt collector violates § 1692f(8) by sending a collection letter in an envelope that displays the debtor's bare account number. *Douglass*, 765 F.3d at 303. This practice "implicates a core concern animating the FDCPA" — the "invasion of privacy" — because an account number is a "core piece of information" pertaining to the debtor's "status as a debtor." *Id.* But we left open whether a debt collector violates § 1692f(8) by displaying a barcode (in *Douglass*, a QR code) on an envelope that, when scanned, reveals the debtor's account number. *Id.* at 301 n.4.

The District Court here answered that open question. It held that NRA's use of a barcode on Daubert's envelope violated § 1692f(8), even if the bare account number itself had not been visible. NRA doesn't challenge that conclusion on appeal, so we don't opine on it. Rather, we focus on *the defense* NRA invoked to avoid liability for the FDCPA violation the District Court found. That defense is called the bona fide error defense. It says a debt collector can escape liability under the FDCPA by proving that its statutory violation was "not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). But the defense doesn't apply if the violation resulted "from a debt collector's mistaken

16

interpretation of the legal requirements of the FDCPA." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010). In other words, a mistake of law isn't a bona fide error.

The District Court here said *Jerman* doesn't apply. When NRA used the (assumedly) offending barcode, the court reasoned, it did so in good-faith reliance on two federal district court decisions holding that barcodes don't violate § 1692f(8): *Waldron v. Professional Medical Management*, 2013 WL 978933, at *3 (E.D. Pa. Mar. 13, 2013), and the district court's decision in *Douglass*, 963 F. Supp. 2d 440, 446–47 (E.D. Pa. 2013), *vacated on other grounds*, 765 F.3d 299. The *Douglass* district court had further held that even a visible account number doesn't violate § 1692f(8). 963 F. Supp. 2d at 446. So, the District Court held, NRA's violation was an unintentional, bona fide error. We don't think it was.

NRA's defense is substantially similar to the defense the debt collector pressed in *Jerman*. There a law firm filed a foreclosure action against a homeowner in state court and attached to the complaint a notice saying that unless the homeowner disputed the debt in writing it would be presumed valid. 559 U.S. at 578–79. The homeowner sued under the FDCPA, saying the statute doesn't require a written dispute. *Id.* at 579 & n.1. Ruling on the law firm's motion to dismiss, the district court recognized that no Sixth Circuit precedential opinion had addressed the issue at hand and that other circuit and district courts had reached different conclusions. 464 F. Supp. 2d 720, 722–25 (N.D. Ohio 2006); *see* 559 U.S. at 579 (noting that the district court acknowledged a "division of authority on the question"). So the district court followed the majority view that the statute doesn't require a written dispute and held that the homeowner adequately pleaded a FDCPA

17

violation. 464 F. Supp. 2d at 725. But after discovery the district court granted the law firm summary judgment, ruling that any FDCPA violation resulted from an unintentional, bona fide error. 502 F. Supp. 2d 686, 693–97 (N.D. Ohio 2007). The law firm, the court said, relied in "good faith" on persuasive authority from other circuit and district courts deeming its conduct legal. *Id.* at 695–96. The Sixth Circuit affirmed, saying the defense applies to "bona fide errors of law." 538 F.3d 469, 476 (6th Cir. 2008).

The Supreme Court disagreed. The bona fide error defense, it held, doesn't apply to FDCPA violations "resulting from a debt collector's mistaken interpretation of the legal requirements of the FDCPA." 559 U.S. at 577. FDCPA violations forgivable under § 1692k(c) must result from "clerical or factual mistakes," not mistakes of law. *Id.* at 587. The Court drew support from § 1692k(c)'s language that a debt collector must maintain "procedures reasonably adapted to avoid" errors. Procedures, the Court said, are "processes that have mechanical or other such regular orderly steps" designed to "avoid errors like clerical or factual mistakes," and "legal reasoning is not a mechanical or strictly linear process" amenable to such procedures. *Id.* at 587 (internal quotation marks omitted).

*Jerman* controls. Like the underlying legal issue in *Jerman* the legal issue here — whether bare account numbers or barcodes violate § 1692f(8) — was unsettled by any relevant binding authority. The Supreme Court has never addressed it. Before *Douglass* we hadn't either, and even there we set aside the issue of barcodes. 765 F.3d at 301 n.4. So without binding authority NRA did precisely what the law firm did in *Jerman*: It relied on persuasive authority (here, two district court decisions) holding that account numbers or barcodes don't violate the

18

FDCPA. *Jerman* makes plain that the bona fide error defense doesn't apply in that circumstance. Where an issue of law under the FDCPA is unsettled by the Supreme Court or a precedential decision of the relevant court of appeals, debt collectors can't escape a district court's finding of FDCPA liability under the bona fide error defense by pointing to the persuasive authority they relied on at the time to justify their conduct. We leave for another day whether the defense "protects a debt collector from liability for engaging in conduct that was expressly permitted under the controlling law in effect at the time, but that is later prohibited after a retroactive change of law." *Oliva v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 825 F.3d 788, 789 (7th Cir. 2016), *reh'g en banc granted* (Aug. 23, 2016). That's not this case.

The district court decisions NRA relied on haven't been abrogated with regard to the legality of barcodes under the FDCPA. But a district court's decision, whether published in a reporter or not, binds only the parties in *that* case and "no judge in any other case." *Gould v. Bowyer*, 11 F.3d 82, 84 (7th Cir. 1993). "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same [district] judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (citation omitted). "[T]here is no such thing as 'the law of the district'" and "*stare decisis* does not compel one district court judge to follow the decision of another." *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991) (internal quotation marks and citation omitted).

NRA's (assumedly) mistaken interpretation of the law is inexcusable under the FDCPA's bona fide error defense irrespective of how many district court decisions supported it at the time. The District Court's unchallenged finding that NRA

19

violated the FDCPA stands accordingly. We'll reverse judgment as a matter of law for NRA on Daubert's FDCPA claim and remand with instructions to enter judgment for Daubert and to calculate damages under 15 U.S.C. § 1692k(a). The court "shall" weigh the factors in subsection (b)(1) in so doing, including the "frequency and persistence of [NRA's] noncompliance," the "nature of such noncompliance," and the "extent to which such noncompliance was intentional." *Id.* § 1692k(b)(1).

**IV**

For these reasons we'll affirm in part and reverse in part. We'll affirm summary judgment for Daubert on his TCPA claim but reverse judgment as a matter of law for NRA on Daubert's FDCPA claim. We'll remand that claim with instructions to enter judgment for Daubert and to calculate FDCPA damages.