**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 20-2673

———————

BERKLEY ASSURANCE CO.

v.

COLONY INSURANCE CO.,
                                        Appellant

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No.: 2:17-cv-05433)
District Judge: Honorable Paul S. Diamond

———————

Submitted under Third Circuit L.A.R. 34.1(a)
April 22, 2021

(Opinion Filed: April 27, 2021)

Before:  AMBRO, RESTREPO, and RENDELL, *Circuit Judges.*

RENDELL, *Circuit Judge*.

This case involves a dispute between two insurance companies regarding defense fees incurred as a result of litigation arising from a building collapse in Philadelphia, Pennsylvania in 2013. Berkley Assurance Company ("Berkley") brought this equitable subrogation and unjust enrichment action against Colony Insurance Company ("Colony") in November 2017 in the Philadelphia Court of Common Pleas, seeking $667,272.13 in defense payments Berkley previously made, plus pre-judgment interest.[1] Colony removed this action to the District Court and filed counterclaims against Berkley for equitable subrogation and unjust enrichment. The District Court granted partial summary judgment for Berkley on the issue of equitable subrogation, and in the alternative, unjust enrichment. The District Court conducted a bench trial as to the damages and awarded Berkley all but $12,295.00 of the amount sought. Colony appeals the District Court's grant of partial summary judgment to Berkley on its equitable subrogation and unjust enrichment claims, dismissal of Colony's counterclaim, and award of damages to Berkley for amounts that were not to Colony's benefit. For the reasons discussed below, we will affirm.

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] We note that the District Court identified a different number in its summary judgment order, but we are relying on the number in the original complaint and the number used in the District Court's damages order.

I.

On June 5, 2013, a building under demolition collapsed onto the neighboring Salvation Army Thrift Store on Market Street in Philadelphia. Six people were killed and thirteen others were injured. The survivors and estates of the victims filed numerous lawsuits against the Salvation Army, the owners of the collapsed building, and the demolition contractor ("Collapse Cases"). The building under demolition was owned by STB Investment Corp, which was principally owned by Richard Basciano.

In December 2012, STB entered into a contract with Griffin Campbell to perform demolition work at 2136–38 Market Street, which required Campbell to retain liability insurance and name Basciano, STB Investment Corp. and their affiliates as "additional insureds" (collectively, "STB Insureds"). Berkley, through its subsidiary Verus Underwriting Managers, LLC, issued a commercial general liability policy to Campbell in March 2013 (the "Berkley Policy" or the "Policy"). The Berkley Policy applied to "additional insureds" such as "Owners, Lessees Or Contractors" when required by agreement with Campbell. App. 103.

STB separately obtained insurance coverage from Colony for the demolition project. Colony issued a commercial general liability policy, which also covered the STB Insureds, but contained an Other Insurance Condition provision that made it secondary to any other primary insurance that covered the STB Insureds.

Following the building collapse on June 5, 2013, the STB Insureds notified Colony, and Colony hired Bonner Kiernan Trebach Crociata, LLP ("Bonner Kiernan") to

3

represent them. The STB Insureds hired another firm, Sprague & Sprague, to serve as lead counsel and to be paid directly by the STB Insureds.

During June and July 2013, Berkley and Colony exchanged a series of letters regarding Berkley's duty to defend. On June 11, 2013, Bonner Kiernan requested that Berkley defend the STB Insureds. On July 8, 2013, Bonner Kiernan again inquired as to Berkley's position regarding their duty to defend. On July 16, 2013, Berkley notified Bonner Kiernan that it was still investigating the matter. On July 18, 2013, Bonner Kiernan insisted that Berkley take a position on its duty to defend. Bonner Kiernan argued that a defense was owed to the STB Insureds and failure to defend would be "bad faith." App. 567.

On July 29, 2013, Berkley notified Sprague & Sprague and Bonner Kiernan that it would defend the STB Insureds under a reservation of rights to deny coverage, based in part on material misrepresentations in the insurance application. Berkley hired the law firm Margolis Edelstein to defend the STB Insureds.

In September 2013, the STB Insureds accepted Berkley's offer to provide a defense subject to their reservation of rights but kept Sprague & Sprague as lead counsel, paid for directly by the STB Insureds.

One year later, in September 2014, Berkley and Colony again discussed Berkley's duty to defend. A Berkley claims handler indicated that Colony had suggested that Berkley no longer needed to be involved in the case. Colony informed Berkley:

> You have a duty to defend unless you disclaim. If you are going to do so dsend [sic] me a copy. My policy is excess to yours at this time. If you are

4

successful in your DJ then the duty to defend then falls on Colony so I am having Bonner firm monitor case.

App. 327.

Berkley notified the STB Insureds on August 19, 2016 that it was no longer obligated to provide a defense. On November 4, 2016, Berkley informed the STB insureds that Livingood, the partner working on the case from Margolis Edelstein, would no longer attend trial. However, Livingood continued to do so. On December 21, 2016, Berkley requested that Livingood seek authorization for his ongoing trial work. On January 5, 2017, Livingood withdrew from representing the STB Insureds, following a conversation with a Berkley claims supervisor who told him that it was not "reasonable or necessary for you to attend trial," and they would only be paying for "reasonable and necessary" work. Livingood was hired shortly thereafter by Colony and rejoined the defense team.

The liability phase of the trial for the Collapse Cases concluded on January 31, 2017 with a verdict against all defendants. The parties entered into a global settlement for $227,000,000.

In the meantime, Berkley filed a declaratory judgment action against Campbell, the STB Insureds, and numerous others with possible interests in the Policy in the Philadelphia Court of Common Pleas. Berkley sought a declaration that the Berkley Policy was void ab initio because Campbell made misrepresentations in the insurance application. Berkley moved for summary judgment and on April 18, 2017, the court ordered that the Berkley Policy was void ab initio (the "void ab initio order"). The court

5

reasoned that rescission is appropriate where "a policy is obtained through material misrepresentations in the insurance application." App. 129.

Berkley brought this equitable subrogation and unjust enrichment action on November 7, 2017, seeking $667,272.13 in defense payments Berkley made on behalf of the STB Insureds plus pre-judgment interest.

Relying on the void ab initio order, the District Court concluded that Berkley was entitled to summary judgment on the equitable subrogation and unjust enrichment claims. The Court rejected Colony's arguments that Berkley had either "voluntarily" provided coverage or that equitable subrogation was unavailable based on its status as the primary insurer. The Court also concluded that Berkley did not have unclean hands.

II.

We review orders granting summary judgment de novo, applying the same test as the District Court. *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 388–89 (3d Cir. 2017). Summary judgment is appropriate where the moving party demonstrates that there is "no genuine dispute as to any material fact" and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the facts in the light most favorable to the nonmoving party and draw all inferences in its favor. *Daubert,* 861 F.3d at 388–89.

We review a district court's findings of fact following a bench trial for clear error and conclusions of law de novo. *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 514–15 (3d Cir. 2012).

## III.

Colony claims on appeal that the District Court erred in granting summary judgment because Berkley either had a duty to defend the STB Insureds or acted as a volunteer in doing so, both of which preclude relief through equitable subrogation. Colony additionally argues that Berkley has not met the remaining elements of an equitable subrogation claim, Berkley has unclean hands, and Berkley failed to make the requisite showing of bad faith from Colony. We conclude that Colony's arguments are without merit.

## A.

We begin by reviewing the District Court's grant of relief on Berkley's equitable subrogation claim. Equitable subrogation is appropriate "[w]here property of one person is used in discharging an obligation owed by another or a lien upon property of another, under such circumstances that the other would be unjustly enriched by the retention of the benefit thus conferred." *Tudor Dev. Grp., Inc. v. U.S. Fid. & Guar. Co.*, 968 F.2d 357, 361 (3d Cir. 1992). To avail itself of relief through equitable subrogation, Berkley was required to show that: (1) it paid the STB Insureds to protect its own interest; (2) it did not act as a volunteer; (3) it was not primarily liable for the debt; (4) the entire debt was satisfied; and (5) allowing subrogation will not cause injustice to the rights of others. *Id.* We will address each factor in turn below.

The District Court concluded that Berkley was acting in its own interest because "[b]efore its Policy was declared void *ab initio*, Berkley would have acted at its own peril had it otherwise refused to provide the STB Insureds with a defense." App. 10. The

7

Court also noted that "Colony threatened that it would be bad faith if Berkley did not defend the STB Insureds." App. 10. Colony seems to concede on appeal that Berkley was acting in its own interest, but argues that because Berkley was acting pursuant to its own obligations, equitable subrogation is unavailable. We conclude that Berkley was acting in its own interest, and that this does not preclude Berkley from being eligible for relief here.

Colony first argues that Berkley had a duty to defend under the Policy until the Policy was declared void by the Philadelphia Court of Common Pleas, so Berkley cannot recover for the defense expenses incurred in the interim. Colony's argument relies on us interpreting the void ab initio order as rendering the Policy cancelled, and therefore only providing prospective relief, rather than void ab initio, which provides retrospective relief. But this issue has been resolved. The Pennsylvania Court of Common Pleas declared the Policy void ab initio, which is the same as a rescission of the Policy. *See Klopp v. Keystone Ins. Companies*, 595 A.2d 1, 4–5 (Pa. 1991) (finding "retrospective relief of rescission" proper after contract was procured by fraud and as a result declaring the policy "void ab initio"). The Pennsylvania Supreme Court has explained the difference between rescission and cancellation as follows:

> A rescission amounts to the unmaking of a contract, and is not merely a termination of the rights and obligations of the parties towards each other, but is **an abrogation of all rights and responsibilities of the parties towards each other from the inception of the contract. It is a form of retroactive relief.** Cancellation is an act destroying the force and effectiveness of the contract, and is a form of prospective relief, affecting the future rights and obligations of the parties towards each other.

8

*Metro. Prop. & Liab. Ins. Co. v. Commonwealth*, 509 A.2d 1346, 1348 (Pa. Commw. Ct. 1986) (emphasis added). Accordingly, the consequence of the void ab initio order is the abrogation, from inception, of all obligations between Berkley and the STB Insureds under the Berkley Policy. Colony cannot avoid this conclusion.[2] We need not further address Colony's arguments as to the merits of this order.[3]

Second, Colony relies on *American & Foreign Insurance Co. v. Jerry's Sport Center, Inc.*, 2 A.3d 526 (Pa. 2010), to argue that because Berkley was acting in part in its own interest to fulfill its duty to defend, it cannot seek reimbursement of the costs incurred before the contract was declared void. *Jerry's Sport* involved the question of whether an insurer can be reimbursed for defense costs incurred while awaiting a declaratory judgment when the declaratory judgment ultimately provided that it had no duty to defend. *Id.* at 542. The Pennsylvania Supreme Court reasoned that insurers have

---

[2] We asked the parties for separate briefing on whether the void ab initio order was binding on Colony. We conclude that Berkley has the better arguments on this issue, namely, that Colony either waived its claim that it was not bound, or, it was bound because it was in privity with the STB Insureds for the purposes of the declaratory judgment action given their shared interest in Berkley's providing coverage. *See Ranger Ins. Co. v. Gen. Accident Fire & Life Assurance Corp.*, 800 F.2d 329, 331–32 (3d Cir. 1986) ("[U]nder Pennsylvania law insurers and insureds are in privity for assessing the collateral estoppel consequences of the prior adjudication of a particular issue unless in that prior adjudication the interests of the insured and the insurer conflicted on that issue."); *cf. Truck Ins. Exch. v. Mid-Continent Cas. Co.*, 320 S.W.3d 613, 618–20 (Tex. App. 2010) (concluding that insurer was in privity with insured for purposes of earlier coverage action with other insurer because insurer's claims "derive[d] entirely from [insured] and, as a result depend[ed] upon [insured's] right to coverage under its policy with [other insurer]").

[3] Colony's counterclaims also rely on interpreting the void ab initio order as a cancellation rather than a rescission, so we will affirm the District Court's dismissal of Colony's counterclaims on the same basis.

an established duty to defend during the period of uncertainty. *Id.* at 543–44. The insurer's duty to defend "is a distinct obligation, separate and apart from the insurer's duty to provide coverage." *Id.* at 541. It is broader than the duty to indemnify, and it arises when "the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy." *Id.* at 540–41. The Pennsylvania Supreme Court explained that permitting reimbursement for defense expenses incurred during this period "would amount to a retroactive erosion of the broad duty to defend in Pennsylvania." *Id.* at 544. As a result, the court rejected the applicability of any equitable bases. *Id.* at 545. The court explained that "[b]y providing a defense to Insured, therefore, [Insurer] acted as much in its own interest as it did in the Insured's. It would be unjust to require Insured to reimburse [Insurer] for the cost of the defense." *Id.* at 546.

We predict that the Pennsylvania Supreme Court would find *Jerry's Sport* inapplicable here, where the contract was declared void ab initio in a rescission order, because it does not raise the same policy concerns about ensuring coverage during a period of uncertainty.[4] Rather than incentivizing insurers to vigorously defend claims from the outset of a case, the aim here is to undo any responsibilities incurred under the

---

[4] If there is no Pennsylvania Supreme Court decision directly on point, we are charged with predicting how it would resolve the question at issue. *Travelers Indem. Co. of Illinois v. DiBartolo*, 131 F.3d 343, 348 (3d Cir. 1997). To do so, we must take into consideration decisions of (1) the Pennsylvania Supreme Court in related areas, (2) the Pennsylvania intermediate courts, (3) federal cases interpreting state law, and (4) other jurisdictions that have discussed the issue. *Hughes v. Long*, 242 F.3d 121, 128 (3d Cir. 2001).

Berkley Policy. To deny Berkley's ability to recover here would destroy the effect of the void ab initio order.

Additionally, in at least one Pennsylvania Superior Court case, the court permitted recovery through equitable subrogation when another insurer rendered a defense, in part to protect its own interests and despite not being primarily liable. *See F.B. Washburn Candy Corp. v. Fireman's Fund*, 541 A.2d 771, 773–74 (Pa. Super. Ct. 1988) (finding that excess insurer was entitled to attorney fees when excess insurer was required to render a defense because primary insurer wrongfully refused to do so).

As to the second element of the equitable subrogation claim regarding Berkley's classification as a volunteer, the District Court concluded that Berkley was not acting as a volunteer because Colony "threatened Berkley with a bad faith suit if it refused to cover the STB Insureds," and under Pennsylvania law, a volunteer is one who "has no interest to protect and is under no legal or moral obligation to pay under the circumstances." App. 11 (citing *Mass. Bonding & Ins. Co. v. Car & Gen. Ins. Corp.*, 152 F. Supp. 477, 482 (E.D. Pa. 1957)). We agree with the District Court that "Colony cannot now seriously contend that Berkley was a 'stranger' or 'intermeddler'" when Berkley was acting out of a concern that it would be subject to a bad faith suit. App. 11. Berkley correctly believed its policy would be declared void and as a result filed for declaratory relief, but until that action was resolved, it needed to protect itself from a bad faith suit. This does not render Berkley a volunteer. *See Prairie State Nat.'l Bank v. United States*, 164 U.S. 227, 231 (1896) (explaining that person acting "on compulsion, to save himself" is not a volunteer for purposes of equitable subrogation).

11

Colony argues that the District Court erred in construing Colony's language in the July 18, 2013 letter as a threat of a bad faith suit. But even if we construe the letter in Colony's favor and accept Colony's argument that it was not pressuring Berkley with a bad faith suit, that does not make Berkley a volunteer. Until Berkley's policy was declared void, Berkley was acting out of concern that the Policy was still binding.

As to the third element, we conclude that Berkley cannot be considered primarily liable for purposes of equitable subrogation when its contract has been declared void ab initio. Colony became the primary insurer when Berkley's policy was declared void ab initio. A claims specialist from Colony acknowledged as much: "My policy is excess to yours at this time. If you are successful in your DJ then the duty to defend falls to Colony." App. 327.

Colony conceded this element in the District Court but on appeal argues that Berkley was primarily liable because Berkley entered into a separate, enforceable contract with the STB Insureds by agreeing to assist the STB Insureds' personal counsel in defense. Berkley responds that it agreed to this pursuant to its existing duty to defend, rather than as a separate contract.

We agree with Berkley that its defense was offered under the existing policy. Rather than making a separate agreement, the STB Insureds' personal counsel explained that the STB Insureds "want to accept the defense and coverage of the Berkley Assurance Company policy obtained by Griffin T. Campbell[.]" App. 559. Berkley's counsel confirmed this acceptance "pursuant to a full and complete reservation of rights" and

12

with the understanding that Berkley was not responsible for the fees incurred by the lead counsel. App. 558.

This conclusion is bolstered by our prediction that the Pennsylvania Supreme Court would not find that the emails agreeing to the defense arrangement constituted a new contract. In *Jerry's Sport*, the Pennsylvania Supreme Court explained that "[a] reservation of rights letter asserts defenses and exclusions that are already set forth in the policy." *Jerry's Sport*, 2 A.3d at 544. To interpret a party's reservation of rights letter to expand the rights under the policy would constitute a "unilateral amendment to the insurance contract." *Id.* Similarly, here, if we were to interpret Berkley's agreement as a new contract, we would undermine the purpose of protecting existing rights.

Colony claims that Berkley cannot seek relief because it did not pay the entirety of the defense, as required by the fourth element. We disagree. Berkley only seeks the amount it has already paid in defense costs, and accordingly, has met this prong. The Pennsylvania Superior Court has explained, "the subrogee stands in the precise position of the subrogor[, so] the subrogee should be limited to recovering in subrogation the amount received by the subrogor." *Hagans v. Const. State Serv. Co.*, 687 A.2d 1145, 1150 (Pa. Super. Ct. 1997) (citation omitted). Berkley only seeks the benefit it paid for the STB Insureds. Colony relies on *U.S. Fidelity and Guarantee Co. v. United Penn Bank*, 524 A.2d 958 (Pa. Super. Ct. 1987). But *U.S. Fidelity* involved a party attempting to subrogate who had not paid out any debts of the principal or sustained any loss as a result of the suretyship. *Id.* at 963. The court determined that subrogation was inappropriate when the party only claimed that third parties were going to demand

13

payment in the future and that it would be obligated to pay the claims when that happened. *Id.* That scenario is inapplicable here.

As for the fifth, and final, element, Colony argues that subrogation would be unjust because Berkley has unclean hands. In particular, Colony argues that Berkley withdrew its defense one month before trial, then relented and entered an appearance but instructed counsel not to attend proceedings or take any action without prior written permission. These actions eventually forced defense counsel to resign. Berkley admitted it only wanted its counsel to cover the portion of the claim that may be covered by the Berkley Policy, which Colony argues demonstrates that Berkley's conduct was unfair to the STB Insureds.

The District Court concluded that Berkley's actions were "prudent" because "Berkley's concerns regarding its obligations to provide the STB Insureds with a defense were well-founded. Accordingly, the steps Berkley took to monitor and control fees and expenses were appropriate." App. 14. We again agree with the District Court that Colony's allegations fall far short of unclean hands.

We have explained that the doctrine of unclean hands applies "when a party seeking relief has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir. 2001). This requires "fraud, unconscionable conduct, or bad faith . . . [which] affects the balance of equities." *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 147 n.12 (3d Cir. 1999) (applying Pennsylvania law). We cannot say that Berkley's conduct was "unconscionable" nor can we say that it affected the balance of

14

equities. We agree with the District Court that Berkley's effort to mitigate costs was to the benefit of STB Insureds, and therefore to the benefit of Colony. Colony argues that Berkley's hostility and lack of support for the STB Insureds required Colony to step in at its own expense. But this further undermines Colony's argument. Had Berkley invested more in its defense, Colony would owe Berkley more now. Colony's earlier involvement allowed Colony to control the strategy and mitigate the costs of the supplemental defense.

B.

Colony additionally argues that Berkley has no standing to bring an equitable subrogation claim because the STB Insureds chose to pursue a defense on their own. Because the STB Insureds provided their own defense, Colony did not breach a duty to defend, thus Berkley, standing in the position of the STB Insureds, cannot bring a claim against Colony—so the argument goes.

We disagree with Colony's characterization of the parties' obligations. The proper inquiry is whether someone else discharged an obligation for which Colony is primarily liable. *See* Restatement (First) of Restitution § 162 (1937). We agree with the District Court that the effect of the void ab initio order is that "Colony retroactively became the primary insurer from the date of the loss, assuming what had been Berkley's obligation to defend." App. 13. Berkley is therefore entitled to seek reimbursement from Colony.

Colony argues that the STB Insureds' election of personal counsel constituted a rejection of Colony's defense. For this claim, Colony relies on Berkley's explanation that "Berkley offered to defend the STB entities but the defense was not accepted. STB insisted that it hire and pay the Sprague firm to defend itself." App. 320. But Berkley's

15

counsel went on to explain that under the arrangement with lead counsel, and at the request of the STB Insureds, Berkley "provided support work as requested" by lead counsel. App. 320. Through this arrangement, Berkley provided work that was "supplemental," and "non-duplicative." App. 320. Further, Colony agrees that Berkley had an obligation to defend despite the fact that the STB Insureds elected for separate lead counsel. While the scope of Berkley's defense was unquestionably limited, and neither Berkley nor Colony provided lead counsel, Colony was required to perform Berkley's role in the absence of Berkley. *See* App. 327 ("If you are successful in your DJ then the duty to defend falls to Colony."). The STB Insureds' election of separate lead counsel does not change this.

C.

We need not review the District Court's ruling regarding other doctrines of unjust enrichment. We note, however, that equitable subrogation is a form of unjust enrichment. *See Tudor*, 968 F.2d at 361. To the extent that Colony argues that Berkley cannot seek relief of any form of unjust enrichment without a showing of misleading conduct from Colony, this is certainly wrong. Although some forms of unjust enrichment require a showing of misleading conduct from the third party, Colony provides no support for its argument that this is an element of equitable subrogation. Berkley made the requisite showing for equitable subrogation, and nothing further is needed.

D.

Lastly, we conclude that the District Court did not err in its assessment of damages. The District Court properly limited Berkley's recovery to those expenses that

16

"Colony would have been obligated to pay as primary insurer to the STB Insureds." App. 19. Subrogation "is a creature of equity; is enforced solely for the purpose of accomplishing the ends of substantial justice . . . ." *Jacobs v. Ne. Corp.*, 206 A.2d 49, 53 (Pa. 1965). As excess insurer, Colony was required to provide the defense in the absence of Berkley's defense. Colony's liability is unchanged by requiring Colony to reimburse Berkley now for the defense Berkley provided. *See F.B. Washburn Candy Corp.*, 541 A.2d at 774 (explaining that primary insurer's liability is unchanged by requiring reimbursement to excess insurer who was wrongfully required to fund defense). We agree with the District Court that Colony's argument that some of the expenses did not benefit Colony is irrelevant.

Our conclusion is further supported by our understanding that insurers sometimes must incur expenses pursuant to their duty to defend that do not benefit the insurers directly. For example, under Pennsylvania law, "if a single claim in a multiclaim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover on a covered claim." *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999). *See also Jerry's Sport*, 2 A.3d at 541–43 (explaining that insurer makes the choice to defend at its own peril, and that an insurer may still have a duty to defend even when the final judgment falls outside the scope of the policy). By requiring the insurer to fund uncovered claims, *Frog* supports that the benefit of the services to Colony is beside the point.

Colony relies on our decision in *Post*, in which we concluded that an insurer's duty to defend under Pennsylvania law extends to counterclaims in a proceeding that is

17

covered by the insurance policy, but does not extend to a separate action brought by the insured involving the same claims. *Post*, 691 F.3d at 522. *Post* raises unrelated issues, and, regardless, it counsels against Colony's position. In *Post*, we recognized that the duty to defend includes incurring the expense of counterclaims because they are "inextricably intertwined with the defense." *Id.* at 521–22. Some counterclaims would not otherwise be covered by a policy, and therefore would provide no benefit to the insurer's interests, but under *Post*, the insurer would still have to fund them as part of the defense. *See id.* at 521. We rejected adopting an alternative rule that would require "a highly contextual and subjective inquiry" because of our interest in "providing clear coverage guidelines for insurers." *Id.* Colony's position would require insurers, and later courts, to parse through each expense and determine whether it exclusively served the interest of the insured, rather than the insurer. Such a rule is not supported by any authority, and runs contrary to our recognized interest in clear guidelines regarding the duty to defend. Accordingly, the District Court's award of damages was proper.

## IV.

For these reasons, we will affirm the District Court's orders dismissing Colony's Counterclaim, granting partial summary judgment to Berkley on its equitable subrogation and unjust enrichment claims, and awarding damages to Berkley.

18