**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1658
_____

JOSEPH PROVENZANO,
Appellant

v.

RLS LOGISTICS; RLS COLD STORAGE OF PITTSTON PA INC.;
BILL JOZEFOWICZ; LORI COGIT; ANTHONY LEO
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. No. 3-18-cv-00997)

District Judge: Honorable Malachy E. Mannion
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 6, 2022
_____

Before: CHAGARES, *Chief Judge*, GREENAWAY, JR., and PORTER, *Circuit Judges*.

(Opinion Filed: September 12, 2022)
_____

OPINION[*]
_____


GREENAWAY, JR., *Circuit Judge*.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

In this appeal, Appellant Joseph Provenzano seeks relief against his employer and its officers or employees, RLS Logistics, RLS Cold Storage of Pittston, PA, Inc., Bill Jozefowicz, Lori Cogit, and Anthony Leo (collectively "RLS") for discriminating against him because of his disabilities resulting from cancer. Because Provenzano's medical challenges unfortunately left him unable to fulfill the responsibilities of Senior Supervisor, even with reasonable accommodation, we will affirm the District Court's entry of summary judgment in RLS's favor.

I.      BACKGROUND

RLS provides cold storage and third-party logistics services for its clients, storing cold products in refrigerators and freezers on its three-building campus. Provenzano was hired by RLS at its Pittston, Pennsylvania location as a warehouse associate in 2011. In February 2016, RLS promoted Provenzano to Supervisor. As a Supervisor, Provenzano's job duties included working with staff to get orders loaded onto trucks, walking through the freezers and warehouses to check on the staff's work, overseeing office staff, and attending meetings. In May 2017, RLS promoted Provenzano again to Senior Supervisor, wherein Provenzano maintained his prior duties but was required to attend more regular meetings, including a 35–45-minute daily meeting and weekly or bi-weekly manager meetings.

Prior to Provenzano's promotion to Senior Supervisor, RLS considered him for the position of Warehouse Manager, which RLS concluded he was not qualified to perform. In September 2017, Provenzano was diagnosed with colon cancer. Through the fall of

2017, Provenzano attempted to maintain his regular duties but, owing to his radiation treatment, needed to miss work and have another RLS employee take over some tasks. Provenzano spoke with Cogit, who raised the possibility of intermittent Family Medical Leave Act (FMLA) leave during his treatment and presented him with FMLA paperwork. Provenzano preferred to, and ultimately did, use his entire FMLA leave after a surgical procedure in November 2017.

On November 9, 2017, before his eventual surgery, Provenzano emailed Jozefowicz, Cogit, and Leo, claiming he felt he had been demoted and needed clarity on his position and compensation. Jozefowicz assured Provenzano he had not been demoted and that his duties had been temporarily reassigned to other employees. His pay and title remained unchanged. The next week, Provenzano met with Leo and agreed to switch his pay status from salaried to hourly. That week, Provenzano worked 46.5 hours and was paid more than his previous weekly salary.

Beginning November 24, 2017, Provenzano took 12 weeks of FMLA leave. His surgeon advised that Provenzano was unable to work as he would be totally incapacitated for an undetermined period. Provenzano attempted to return to work on February 16, 2018. Provenzano's oncologist advised that, if Provenzano were to return to work, he would be restricted to a maximum of 50 hours per week and should not have extended exposure to cold climates, which Provenzano said meant more than one or two hours per daily shift. Provenzano advised RLS of these restrictions on February 14, 2018. Cogit responded that it may not be possible to return Provenzano to his prior position or an equivalent position given the nature of work at a cold storage facility. Cogit promised,

3

however, to try and find a way to accommodate Provenzano. RLS tried to employ Provenzano in an inventory management role wherein he kept his title as Senior Supervisor and his previous weekly salary. In that role, Provenzano would be required to manage inventory for a particular customer within one building of RLS's campus. But Provenzano, expecting to return to his normal job duties, walked off the job the day of his return, February 16, 2018.

Provenzano subsequently filed suit on May 10, 2018. In the operative complaint, Provenzano sought relief: (1) under the FMLA; (2) for intentional infliction of emotional distress (IIED); (3) under the Americans with Disabilities Act (ADA); and (4) under the Pennsylvania Human Relations Act (PHRA). RLS moved for summary judgment, and in connection with his opposition, Provenzano supplied a sworn declaration to support his counterstatement of facts. The District Court granted summary judgment for RLS on all of Provenzano's federal claims and the PHRA claims. It declined to exercise supplemental jurisdiction over the IIED claim. In granting summary judgment, the District Court explained that it declined to consider Provenzano's declaration because it constituted a "sham affidavit."

## II.  JURISDICTION AND STANDARD OF REVIEW

Provenzano sought relief under the laws of the United States. The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. Provenzano also sought relief under the laws of Pennsylvania for claims forming the same case or controversy as his federal claims. The District Court also had discretion to exercise jurisdiction pursuant to

4

28 U.S.C. § 1367. Provenzano timely appealed from the District Court's entry of summary judgment. We have jurisdiction pursuant to 28 U.S.C. § 1291.

We review the grant of summary judgment de novo. *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 388 (3d Cir. 2017). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We view the facts in the light most favorable to the nonmoving party, drawing all inferences in its favor." *Daubert*, 861 F.3d at 388-89. "[W]e review a district court's decision to exclude materials under the sham-affidavit doctrine for abuse of discretion." *Id.* at 389.

## III. DISCUSSION

### A. Sham Affidavit

Provenzano argues that the District Court's refusal to credit his declaration was erroneous. The District Court is empowered to disregard a nonmovant's affidavit if it "contradicts earlier deposition testimony without a satisfactory or plausible explanation." *Id.* at 391. Where the now contradictory affidavit is unsupported by the record, directly contrary to other testimony, or is clearly offered solely to defeat summary judgment, we will not find an abuse of discretion. *Id.* at 392.

In short, the District Court determined Provenzano's attempt to create a genuine dispute as to the amount of time spent in freezers versus at a desk in his role as Senior Supervisor before his diagnosis contradicted both his prior testimony and the rest of the record. Provenzano testified that he did not work primarily at a desk and that he was required to be in a freezer for more than an hour or two per day, beyond the amount of

5

time Provenzano said his physician recommended he be exposed to freezing temperatures. The District Court also correctly observed that Provenzano's declaration attempts to explain things he had the opportunity to explain in his deposition. Provenzano did not attempt to explain these inconsistencies, thus, the District Court did not abuse its discretion in ruling on summary judgment without considering Provenzano's declaration.

With that in mind, we turn to the merits at summary judgment.

### B. ADA, FMLA, and PHRA Claims

To succeed on a claim of disability discrimination under the ADA, a plaintiff must demonstrate that he or she was: (1) disabled; (2) subject to an adverse employment action; (3) qualified for the position; and (4) the adverse employment action was undertaken because of the disability. *Fowler v. AT & T, Inc.*, 19 F.4th 292, 299 (3d Cir. 2021).[1] Here, the District Court concluded that Provenzano's ADA and PHRA claims failed because no genuine dispute existed as to his qualification for the role of Senior Supervisor. We agree. Given the understandable medical restrictions imposed upon Provenzano, he simply could not perform the essential function of spending more than one or two hours a day in freezing temperatures. Nor has Provenzano pointed to any reasonable accommodations that could have permitted him to perform the essential functions of his job.

---

[1] Our analysis under the PHRA is the same as under the ADA. *See Capps v. Mondelez Global, LLC*, 847 F.3d 144, 150 n.1 (3d Cir. 2017) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)).

To succeed on an FMLA retaliation claim, a plaintiff must demonstrate that he or she: (1) invoked the right to FMLA leave; (2) suffered an adverse employment action; and (3) the adverse action was caused by the invocation of FMLA rights.[2] *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301-02 (3d Cir. 2012). The District Court concluded that Provenzano had not demonstrated that he had suffered any adverse employment action because he received all of his FMLA benefits and returned to RLS with his same title and compensation. Again, we agree. While Provenzano was told his responsibilities would change upon his return, because his recovery did not permit him to return to his old duties, we cannot conclude that RLS's attempted accommodation constituted an adverse employment action.

## IV. CONCLUSION

We will affirm the District Court's entry of summary judgment in favor of RLS.

---

[2] We read Provenzano's opening brief to only challenge the District Court's resolution of his FMLA retaliation claim. *See* **Opening Br. 39-41.** Accordingly, we do not analyze other theories of liability implicating the FMLA.